Triple J Cattle, Inc., and Bennie D. Herring, its president, appeal from the trial court's denial of their motion for a new trial in two cases that had been consolidated and tried together. We affirm.
Herring and Triple J, represented by Herring,[1] tried claims against Billy and Betty Joan Carter based on fraud and conspiracy to defraud and claims against Robert F. Chambers and his mother, Claudean F. Chambers, based on conspiracy to defraud and abuse of process. After Triple J and Herring presented their evidence and rested, the trial court directed verdicts in favor of the defendants, the Carters and the Chamberses, and in favor of Triple J and Herring on the Chamberses' counterclaim alleging abuse of process.
 FACTS
The facts underlying this case involve negotiations for the sale and purchase of real property and a livestock auction company called C.L. Chambers and Son, Inc. (referred to herein as the "stockyard company"). On January 31, 1986, Herring, on behalf of Triple J, entered into an agreement with the Carters in which Triple J agreed to purchase the stockyard company; the agreement called for Triple J to assume two mortgages held by the Carters. The first mortgage had been executed in favor of First Alabama Bank of Troy, Alabama, for $50,000. The second mortgage, for $40,000, secured the unpaid portion of a promissory note the Carters had executed in favor of the Chamberses when the Carters purchased the stockyard company from the Chamberses on November 26, 1984. These mortgages related to the real property on which the stockyard company operated its business. With respect to the second mortgage, the sales agreement provided:
 "(B) Triple J assumes the responsibility of that certain second mortgage payable to Robert Chambers and [his] mother, Claudean Chambers, at a maximum amount of Forty Thousand Dollars ($40,000) or whatever lesser sum might be negotiated between the parties."
(Emphasis added.)
Triple J made the payments due to First Alabama Bank; however, neither it nor the Carters made any payments on the debt secured by the second mortgage held by the Chamberses, because of a dispute as to *Page 1223 
the amount due on the debt. The Chamberses sued the Carters on the promissory note the Carters had executed when they purchased the stockyard company from the Chamberses. The Carters counterclaimed, arguing that their execution of the note had been induced by fraudulent misrepresentation on the part of the Chamberses regarding the amount of the accounts receivable, the inventory, and other assets of the business, and its liabilities.
Triple J and Herring intervened in that action and sought to enjoin the Chamberses from foreclosing on the property subject to the mortgage. The trial court enjoined the Chamberses from foreclosing until such time as the "correct balance of the mortgage debt due [and] owing has been legally ascertained between Robert F. Chambers and Claudean F. Chambers and Billy Carter and Betty Joan Carter by a settlement or final judgmentrendered." (Emphasis added.) This Court affirmed the trial court's injunction. Triple J Cattle, Inc. v. Chambers,551 So.2d 280 (Ala. 1989).
Shortly before the date set for the trial to determine the amount due on the note, the Chamberses and the Carters reached a settlement and stipulated that the debt was $46,500. Triple J and Herring sued the Chamberses and the Carters, claiming that the settlement represented a conspiracy between the Chamberses and the Carters to defraud Triple J by requiring Triple J to pay an inflated amount to satisfy the second mortgage it had assumed.
Triple J and Herring's complaint alleged fraud on the part of Billy Carter. They alleged that Carter had misrepresented to Herring that the amount due on the second mortgage would be reduced by amounts recovered by the Carters on a claim the Carters had against the Chamberses for "shortages" in the custodial checking account, inventory, and accounts receivable of the stockyard company when the Carters bought the company from the Chamberses.
Triple J and Herring later amended their complaint to add a claim against the Chamberses, alleging an abuse of process in their foreclosure. The Chamberses counterclaimed against Triple J and Herring for abuse of process in the current litigation.
Triple J and Herring, represented by Herring, tried their claims against the Chamberses and the Carters. After Triple J and Herring presented their evidence and rested, the trial court directed verdicts in favor of the Chamberses and the Carters on Triple J and Herring's claims. The court also granted a directed verdict in favor of Triple J and Herring on the Chamberses' counterclaim alleging abuse of process.
Triple J and Herring filed a motion to set aside the directed verdict and for a new trial. After a hearing, the trial court denied these motions. Triple J and Herring appeal.
 I. STANDING
The Chamberses and Carters filed a motion with this Court to dismiss the appeal, arguing that Bennie D. Herring, as assignee of Triple J, lacks standing to appeal.
To have standing to appeal a judgment, one must have been a party to the judgment below. Daughtry v. Mobile County SheriffsDep't ex rel. Purvis, 536 So.2d 953, 954 (Ala. 1988). The caption of the complaint indicates the parties to a judgment on that complaint. See Rule 10(a), A.R.Civ.P. (requiring that "[i]n the complaint the title of the action shall include the names of all the parties").
As early as May 20, 1991, the trial court allowed Triple J and Herring, as intervenors in the action between the Chamberses and the Carters, to appear as "Triple J Cattle, Inc., and Bennie D. Herring, as assignee of Triple J." Although no assignment from Triple J to Herring appears in the record, the parties and the court proceeded with the case including parties identified as "Triple J Cattle, Inc. and Assignee, Bennie D. Herring." At the commencement of the trial, the judge stated that he interpreted the action to be one by Bennie D. Herring and Triple J, as plaintiffs, against the Chamberses and the Carters, as defendants. *Page 1224 
The ruling from which Triple J and Herring now appeal, the denial of their motion for a new trial, was entered under the style "Triple J Cattle, Inc. and Assignee, Bennie D. Herring, Intervenor." In addition, the motion for directed verdict and the order granting that motion carried the style "Triple J Cattle, Inc. and Assignee, Bennie D. Herring, Intervenor." Herring was, thus, a party to the judgment and has standing to appeal that judgment. Based on the trial court's finding that Triple J had assigned its interest (and liabilities) to Herring, we conclude that Herring had a sufficient individual involvement in the case to appeal this case.
 II. DIRECTED VERDICT
The appellants argue that the trial court erred in directing verdicts for the Chamberses and the Carters. On appeal, we review a motion for directed verdict by the same standard the trial court uses in determining whether to grant or deny the motion. "Thus, when reviewing the trial court's ruling on the motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the nonmovant." Ogle v. Long, 551 So.2d 914, 915 (Ala. 1989);Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala. 1988).
This action was commenced before June 11, 1987; therefore, the applicable standard of proof is the "scintilla rule." Ala. Code 1975, § 12-21-12. The motion for directed verdict was to be denied if there was a scintilla of evidence in support of Herring and Triple J's claims. Peete v. Blackwell,504 So.2d 222, 224 (Ala. 1986).
When the trial court directed the verdicts, Triple J and Herring's claims included a claim of fraud against Carter, a claim of abuse of process against the Chamberses, and a claim of conspiracy to defraud against the Carters and the Chamberses. Triple J and Herring argue that they presented sufficient evidence to create an issue of fact warranting jury consideration of each of their claims.
 A. FRAUD-AS TO THE CARTERS
Triple J and Herring argue that they presented sufficient evidence to create a conflict warranting jury consideration of their promissory fraud claim against the Carters. Although Betty Joan Carter was included as a defendant, Triple J and Herring made no allegations or arguments regarding her. Therefore, the court properly directed the verdict in favor of Betty Joan Carter.
The sole evidence presented at trial with respect to the fraud claim was this testimony by Herring:
 "And in the process of buying [the stockyard company], Billy [Carter] told me that he and his attorney were going to sue Bobby Chambers and [that] I would be the beneficiary of any amount of money that was received as a result of that suit."
Billy Carter's alleged misrepresentation constitutes a promise to perform an act in the future contingent on the outcome of litigation or negotiations. Therefore, the claim is one of promissory fraud. See Padgett v. Hughes, 535 So.2d 140,141 (Ala. 1988) (holding that the claim that defendant promised that "he would foreclose the mortgage so that Padgett could receive clear, unencumbered title when the [outstanding tax] liens were satisfied" constituted a claim of promissory fraud).
A claim of promissory fraud requires proof of six elements: (1) a false representation, (2) of a material existing fact, (3) that is justifiably relied upon by the plaintiff, (4) that causes damage to the plaintiff as a proximate result of the reliance, (5) "proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised," and (6) "proof that the defendant had an intent to deceive." Padgett v. Hughes, 535 So.2d at 142; see also Hickoxv. Stover, 551 So.2d 259, 263 (Ala. 1989) (changing the standard for reliance from "reasonable reliance" to "justifiable reliance").
Herring and Triple J presented no evidence that Billy Carter, at the time he *Page 1225 
made the alleged promise, intended to deceive or not to perform. See Russellville Production Credit Ass'n v. Frost,484 So.2d 1084, 1086 (Ala. 1986) (holding that the failure to perform a promised act is not in itself evidence that the promisor, when the promise was made, intended to deceive). Therefore, the court properly directed the verdict in favor of Billy Carter on the claim of promissory fraud.
 B. ABUSE OF PROCESS — AS TO THE CHAMBERSES
Triple J and Herring argue that the trial court erred in directing a verdict in favor of the Chamberses on the abuse of process claim. To establish an abuse of process, one must present evidence of malice, the existence of an ulterior purpose, and wrongful use of process. Drill Parts Serv. Co.v. Joy Manufacturing Co., 619 So.2d 1280 (Ala. 1993) (holding that "lack of probable cause is not an essential element of [an] abuse of process [claim]").
Triple J and Herring presented no evidence of any of these elements. Accordingly, the directed verdict in favor of the Chamberses was appropriate.
 C. CONSPIRACY — AS TO THE CHAMBERSES AND THE CARTERS
Triple J and Herring argue that the Chamberses and the Carters conspired to defraud Triple J by agreeing to settle the Carters' claim against the Chamberses. "A civil conspiracy requires a combination of two or more individuals to accomplish a lawful end by unlawful means." Drill Parts Serv. Co. v. JoyManufacturing Co., 619 So.2d at 1290 (quoting Nelson v.University of Alabama System, 594 So.2d 632, 634 (Ala. 1992),cert. denied, ___ U.S. ___, 113 S.Ct. 62, 121 L.Ed.2d 30
(1992)). A civil conspiracy action focuses not on the conspiracy alleged, but on the wrong committed by virtue of the alleged conspiracy. Sadie v. Martin, 468 So.2d 162, 165 (Ala. 1985). Conspiracy itself furnishes no civil cause of action.Allied Supply Co. v. Brown, 585 So.2d 33, 36 (Ala. 1991). Therefore, a conspiracy claim must fail if the underlying act itself would not support an action. Id.
Because we conclude that Triple J and Herring have made no allegations against either the Chamberses or the Carters that would support a conspiracy claim, we affirm that portion of the judgment based on the directed verdict in favor of the Chamberses and the Carters on the conspiracy claim.
 III. ADMISSIBILITY OF A TAPE RECORDING
At trial, Triple J and Herring called Billy Carter as an adverse witness and asked Carter if he had ever told Herring that Triple J and Herring would be the beneficiaries of any amount of money that the Carters gained as a result of the suit against the Chamberses. Carter replied that he did not recall making such a statement. Triple J and Herring then attempted to impeach Carter by evidence of a prior inconsistent statement made during a taped telephone conversation.
The telephone conversation that was recorded allegedly occurred over four and one half years after the event to which it related had taken place. Triple J and Herring allege that Herring taped a telephone conversation he had with Billy Carter in September 1990 that related to Triple J's agreement to purchase the stockyard company; that agreement had been entered in January 1986. Triple J and Herring allege that, during this conversation, Carter admitted that he had told Herring that he and Triple J would be the beneficiaries of any amount the Carters recovered on the claim against the Chamberses.
Initially, Triple J and Herring offered an edited version of the original tape recording. Herring admitted that he had altered the original tape by erasing portions of it that he said were irrelevant. The trial court heard the recording outside the presence of the jury and gave opposing counsel an opportunity to object, as required. Wright v. State,38 Ala. App. 64, 79 So.2d 66 (1954), cert. denied, 262 Ala. 420,79 So.2d 74 (Ala. 1955). The trial court then *Page 1226 
ruled that the tape was inadmissible in its altered form. SeeEx parte Fuller, 620 So.2d 675 (Ala. 1993) (clarifying requirements for admission of sound recording).
Triple J and Herring then presented a tape that Herring contended was the original unedited tape recording. The trial court played this tape outside the presence of the jury and likewise held it inadmissible. Triple J challenges the trial court's rulings. We find no error in those rulings.
Before extrinsic evidence may be used to establish a prior inconsistent statement to impeach a witness, a proper predicate must be laid. Ex parte Pope, 562 So.2d 131, 134 (Ala. 1989),cert. denied, 498 U.S. 841, 111 S.Ct. 118, 112 L.Ed.2d 87
(1990); White Consol. Indus. v. American Liberty Ins. Co.,617 So.2d 657 (Ala. 1993) (clarifying the law regarding admissibility of prior inconsistent statements used to impeach).
The record reveals that Triple J and Herring failed to lay a proper predicate to impeach Carter's testimony. Herring and Triple J made the following statements, attempting to lay a proper predicate:
 "Q. [BY MR. HERRING:] And you never told me that I would be the beneficiary of any amount of money that you gained as a result of that suit against the Chamberses?
 "A. [BY MR. CARTER:] I don't recall that statement.
"Q. You don't recall that statement?
"A. No."
Because Triple J and Herring did not lay a proper predicate to impeach Carter's testimony, the trial court did not abuse its discretion in rejecting the tape recording offered for impeachment.
 IV. PROTECTIVE ORDER
Triple J and Herring argue that the trial court's refusal to lift a protective order it had previously entered denied them adequate discovery. On February 15, 1991, they sought depositions of Billy Carter, Bobby Chambers, and a representative of First Alabama Bank of Brundidge, Alabama. Triple J and Herring also filed a request for production of documents on that date.
The Chamberses then filed a motion for protective order on the ground that the notices for discovery were untimely. The trial court granted this motion and later denied Triple J and Herring's motion to reconsider the protective order.
Rule 26(c), Ala.R.Civ.P., recognizes that the right of discovery is not unlimited. This Court has held that the trial court is vested with discretion in the discovery process and that "[t]he particular details of the discovery process must necessarily be left to the sound discretion of the trial court." Campbell v. Regal Typewriter Co., 341 So.2d 120, 124
(Ala. 1976), modified on other grounds, Sharp Electronics Corp.v. Shaw, 524 So.2d 586 (Ala. 1987). Accordingly, this Court reviews the trial court's discovery orders only for an abuse of discretion.
The Chamberses argued in their motion for a protective order, and in their response to the motion to reconsider, that Triple J and Herring's discovery attempts were untimely. When Triple J and Herring first sought discovery, the case had been pending for approximately five years. Triple J and Herring had been parties to that case for approximately three years. They gave no excuse for their untimely discovery requests.
Triple J and Herring do not argue that the trial court abused its discretion or that it placed an arbitrary limit on discovery. Furthermore, after carefully reviewing the record, we hold that the trial court did not abuse its discretion in denying the motion to reconsider the protective order, given the circumstances of this case.
 V. BILL OF REDEMPTION
Triple J and Herring argue on appeal that the trial court erred in denying their "bill of redemption." They do not specify the issues for review. Furthermore, they cite no authority for their arguments. "Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for *Page 1227 
it is neither this Court's duty nor its function to perform all the legal research for an appellant." Sea Calm Shipping Co. v.Cooks, 565 So.2d 212, 216 (Ala. 1990); Rule 28(a)(5), Ala.R.App.P.
From a cursory review of the arguments raised by Triple J and Herring with respect to this issue, we find no reason for reversal. The judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] Triple J Cattle, Inc., and Bennie D. Herring submitted only one brief to this Court. It is undisputed that Herring is not an attorney. This Court has recognized the general rule "that a corporation can appear in court only through an attorney; it cannot appear pro se." A-OK Construction Co. v. CastleConstruction Co., 594 So.2d 53, 54 (Ala. 1992). Ordinarily, this Court would dismiss an appeal brought by a nonlawyer on behalf of a corporation for failure to file a brief or to prosecute the appeal. Rule 2(a)(2), Ala.R.App.P. Nevertheless, in this case, as in A-OK Construction Co., "we have studied the record and the materials that have been submitted, and we have determined that the judgment is due to be affirmed on the merits." In the interest of expediting the decision, we suspend the rules regarding dismissals, and we affirm the judgment on the merits.