This lawsuit arises out of injuries Gusta Golden claims to have suffered as a result of overexposure to lead particles while working within the line and scope of his employment for Thermal Components, Inc., a division of Insilco Corporation ("Thermal Components"). Golden filed a multi-count complaint asserting, among other things, that two of his co-employees, Wayne Raymar and Frank Johnson, caused his injuries by negligent or wanton conduct. Golden also asserted that Thermal Components, or Insilco Corporation, had designed a defective brass mill and was thus liable for his injuries under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). Raymar, Johnson, and Thermal Components moved the trial court to dismiss Golden's claims, pursuant to Rule 12(b)(6), Ala. R. Civ. P., arguing that Golden's claims were barred by the exclusive remedy provision of Alabama's Workers' Compensation Act. Ala. Code 1975, § 25-5-53. The trial court denied the defendant's motion to dismiss Golden's claims, and we granted permission to appeal from that order, pursuant to Rule 5, Ala. R.App. P.[1] Because we conclude that Golden's AEMLD claim could possibly have merit, but that his remaining claims are precluded by the exclusive remedy provisions of the Workers' Compensation Act, we affirm in part, reverse in part, and remand.
 I.
This Court must review motions to dismiss in the light most favorable to the plaintiff, resolving all reasonable doubts in his favor. Blackwood v. Davis, 613 So.2d 886, 887 (Ala. 1993). Dismissal is appropriate only in those cases where the plaintiff's claims, if proven, would not entitle him to relief.Id.
The complaint in this case, when viewed in the light most favorable to the plaintiff, Golden, suggests the following: Golden was employed by Thermal Components in January 1996 to work in its brass mill section. In that mill he was frequently exposed to lead particles. Although Golden was provided with protective clothing to prevent overexposure to lead particles, he alleges that he was instructed by his supervisors, the defendants Raymar and Johnson, to wear the protective clothing only inside the "molten pot," a closed area inside the brass mill section of the plant. Golden alleges that the brass mill, or its component parts, were defectively designed *Page 1168 
or manufactured. In particular, Golden alleges that Thermal Components, or Insilco, failed to provide for proper ventilation or to install a safety device that would have prevented or controlled the release of lead contaminants.
Specifically, Golden's multi-count complaint alleges, among other things, that all of the defendants either "negligently or wantonly" failed: (1) to provide him with a safe place to work; (2) to provide him with proper training in the safety measures appropriate for avoiding exposure to lead; (3) to inspect the brass mill for lead contaminants; and (4) to provide him with adequate safeguards or safety devices.
 II.
On appeal, Raymar and Johnson argue that Golden's exclusive remedy for his alleged on-the-job injuries is provided by the Workers' Compensation Act. Specifically, Raymar and Johnson assert that to bring such an action as this against them as co-employees, Golden must assert that they "willfully" injured him. Golden responds by arguing that Raymar and Johnson did "willfully" injure him, within the meaning of Ala. Code 1975, § 25-5-11(c)(2) (co-employee's removal of a safety device from a machine) by instructing him to wear protective clothing only in part of the brass mill section and by failing to install a safety device in the brass mill that would have protected him from overexposure to lead particles. Thus, Golden asserts that he is not limited to the remedies provided by the Workers' Compensation Act.
Alabama's Workers' Compensation Act provides, in pertinent part, the following general rule of exclusivity of remedy:
 "The rights and remedies granted in this chapter to an employee shall exclude all other rights and remedies of the employee, his or her personal representative, parent, dependent, or next of kin, at common law, by statute, or otherwise on account of injury, loss of services, or death."
Ala. Code 1975, § 25-5-53 (emphasis added). See § 25-5-52. Section 25-5-11(b) limits the scope of the exclusivity rule by providing, in pertinent part, that "[i]f personal injury . . . to any employee results from the willful conduct, as defined in subsection (c) herein, of any . . . employee of the same employer . . ., the employee shall have a cause of action against the person." Section 25-5-11(c) defines "willful conduct" to include:
 "(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of 'willful conduct.'
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective."
(Emphasis added.)
We have consistently held that evidence of negligent or wanton conduct is insufficient to establish the "willful conduct" required by § 25-5-11(c).[2] See Davis, 613 So.2d at 887 (affirming a dismissal of the plaintiff's action because "[a]lthough the allegations [in the complaint] indicate[d] that the co-employees may have been negligent . . . there were no allegations that the co-employees' alleged failure . . . constituted 'willful conduct' under § 25-5-11(c)(1)"); Barronv. CNA Ins. Co., 678 So.2d 735, 737 (Ala. 1996) (affirming a summary judgment in favor of the defendants because, although the plaintiffs alleged that the defendants negligently or wantonly failed to provide them a safe place to work, "[t]he plaintiffs did not allege willful conduct on the part of [the] defendants"); see also Ala. Code 1975, § 25-5-14 ("The legislature finds that actions filed on behalf of injured employees against . . . employees of the same employer seeking to recover damages *Page 1169 
in excess of amounts received . . . from the employer under the workers' compensation statutes . . . and predicated upon claimed negligent or wanton conduct resulting in injuries . . . are contrary to the intent of the legislature. . . ."). Thus, Golden's general assertions that Raymar and Johnson "negligently or wantonly" failed to adequately inspect the brass mill, failed to appropriately train Golden, or failed to adequately provide Golden with a safe place to work do not support an action under § 25-5-11(c)(1) for a recovery in excess of that provided by the Workers' Compensation Act.
Moreover, even when the factual allegations of the complaint are read most favorably to Golden, they do not support the assertion that Raymar or Johnson ever removed a safety device from a machine, within the meaning of § 25-5-11(c)(2). Golden's assertion that Raymar and Johnson instructed him to wear protective clothing only in the "molten pot" section of the brass mill, or failed to provide him with protective clothing, does not constitute the "removal from a machine of a safety guard or safety device." In Mallisham v. Kiker, 630 So.2d 420
(Ala. 1993), we held that the failure to install timbers in a mine did not constitute removal of a safety device from a machine, because the mine was not a machine. Similarly, Golden's body, on which the protective clothing would have been worn, was not a machine.
Similarly, Golden's assertion that Raymar and Johnson failed to install an appropriate safety device or that they failed to install a better ventilation system does not support a claim alleging "removal from a machine of a safety device." We rejected this argument in Burkett v. Loma MachineManufacturing, Inc., 552 So.2d 134, 138 (Ala. 1989), where we held that § 25-5-11(c)(2) imposes no duty to add safety guards that the manufacturer does not provide with the product. AccordDavis, 613 So.2d at 888 (holding that co-employees' failure to install adequate lighting not provided with a product did "not constitute the removal of, or failure to install, a safety device or safety guard provided by manufacturers of machines, within the meaning of § 25-5-11(c)(2)"). In this case, there was no safety device provided for the brass mill by the manufacturer that Raymar and Johnson failed to install. Therefore, the trial court erred when it denied Raymar and Johnson's motion to dismiss those counts of the complaint that deal with their failure to provide protective clothing or to install a better ventilation system.[3]
With respect to Thermal Components, Golden's employer, Golden concedes that the Workers' Compensation Act provides the exclusive remedy. Accordingly, we also reverse the trial court's order denying the motion to dismiss those counts of the complaint asserted against Thermal Components.
Golden further contends that Insilco is a corporation distinct from his corporate employer, Thermal Components. Thus, he argues, he is not prohibited by the Workers' Compensation Act from bringing his AEMLD claim against Insilco, which he alleges manufactured or designed the brass mill. It is unclear from the complaint whether Insilco is a corporate entity separate from Thermal Components. It is therefore possible that the Workers' Compensation Act does not prohibit Golden's AEMLD claim against Insilco. See Davis, 613 So.2d at 887; Ala. Code 1975, § 25-5-1(4) (defining "employer"); § 25-5-53 (barring a tort action by an injured employee against his employer and the employer's workers' compensation carrier). *Page 1170 
Therefore, we affirm that portion of the trial court's order denying the motion to dismiss those counts asserting an AEMLD claim, to the extent that claim is asserted against Insilco, a separate corporation. We reverse that portion of the trial court's order denying the motion to dismiss the remainder of the counts, and we remand the cause for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, COOK, and LYONS, JJ., concur.
KENNEDY, J., dissents.
[1] Although Golden's son and his son's mother also filed claims against the defendants, those claims are not currently before this Court.
[2] "Negligence" has been defined as "an inattention, thoughtlessness, or heedlessness, a lack of due care." Ex parteAnderson, 682 So.2d 467, 470 (Ala. 1996) (citations omitted)."Wantonness" and "wilfulness" have been defined as follows:
" ' "Wantonness" is the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or probably result.
 " ' "Wilfulness" is the conscious doing of some act or omission or some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.' "
Reed v. Brunson, 527 So.2d 102, 119 (Ala. 1988) (quoting AlabamaPattern Jury Instructions: Civil 29.01 (1974)) (emphasis added) (citations omitted).
[3] We note that Golden argued to the trial court that he was entitled to elect recovery either under the Workers' Compensation Act or under general Alabama tort law. On appeal, Golden property abandons this argument. See Barron v. CNA Ins.Co., 678 So.2d 735, 739 (Ala. 1996) (stating that the Workers' Compensation Act is the exclusive remedy for on-the-job injuries unless an exception to exclusivity is expressly provided for in the Act). *Page 1172