[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 275 
Bettye Callens, individually and as the administrator of the estate of her mother, Julia Presley, appeals a judgment dismissing her amended complaint and a summary judgment (as to her original complaint) in favor of the defendants Jefferson County Nursing Home ("JCNH"); Jefferson County; and the Jefferson County Commission and its Commissioners. We affirm in part, reverse in part, and remand.
 I. Facts and Procedural History
From February 1992 through April 4, 1996, Presley was a resident at JCNH, a nursing home facility owned and operated by Jefferson County. Callens claims that, when Presley was admitted, JCNH contracted to provide care and treatment for Presley. Callens also alleges that, from September 1995 to March 1996, she made numerous complaints to JCNH, the Jefferson County Commission, and the Alabama Department of Public Health ("DPH") regarding the services and treatment Presley was receiving at JCNH and regarding the health and safety conditions at JCNH. These complaints included the complaint that her mother was living in unsanitary conditions (for example, that she was occupying an ant-infested bed); that her *Page 276 
mother was frequently dressed in unclean and soiled clothing; and that JCNH was not carefully supervising her mother. After Callens made her complaints, the DPH investigated JCNH, served JCNH and Jefferson County with a notice of the deficiencies at JCNH, and asked them to submit a plan of correction.
On December 11, 1995, while JCNH employees were attempting to insert a Foley catheter, Presley suffered a fracture to her right hip and her right and left pubic bones. Callens alleges that the fractures were caused by negligence on the part of JCNH employees while they were restraining Presley in their attempt to insert the catheter. The nurse's notes regarding the incident indicate that several JCNH employees were restraining Presley and that the employee holding Presley's right leg bent it toward the head of Presley's bed until her leg popped audibly. Callens alleges that this incident caused Presley to have surgery on her right hip, on February 16, 1996. Callens also alleges that JCNH employees intentionally withheld from her information about this incident, and that, when she asked JCNH employees about her mother's injury, they told her that Presley herself had somehow injured her knee.
On April 2, 1996, Callens, as Presley's legal guardian, filed a notice of claim with the Jefferson County Commission regarding Presley's December 11, 1995, injury.[1] On April 4, 1996, Presley experienced a fracture to her left hip and, on April 8, 1996, had surgery to replace her left hip. After this surgery, Presley's doctors released her from the hospital to a different nursing home in Jefferson County, where she resided until she died on May 9, 1996.
On June 17, 1997, Callens, individually and as personal representative of Presley's estate, sued JCNH; Jefferson County; the Jefferson County Commission and its Commissioners;[2] Augmentation, Inc., a corporation that contracts to supply nurses to work at nursing homes and hospitals; and Steve Cox, who the plaintiff alleged to be an employee of either JCNH or Augmentation. Callens, in her representative capacity, claimed damages for an alleged wrongful death; in both her individual and representative capacities, she alleged, and sought damages for, a civil conspiracy; in her individual capacity she claimed damages for breach of an alleged contract between her and JCNH; and, in her individual capacity she alleged, and sought damages for, the tort of outrage. On June 18, 1998, Callens filed an amended complaint stating claims, made in her representative capacity, alleging (1) personal injury to Presley prior to her death and (2) negligent hiring, training, and supervision on the part of JCNH and Augmentation, Inc., which negligent acts she alleged caused personal injury to Presley prior to her death.
The trial court dismissed Callens's amended complaint, stating:
 "Although said claims may be deemed to survive the death of Julia Presley, pursuant to Groeschner v. County of Mobile, 512 So.2d 70 [(Ala. 1987)], the amendment of this wrongful death complaint to allege and claim personal injuries was not filed within the statute of limitations nor does it relate back. Accordingly, all claims for personal injury are dismissed."
After dismissing the amended complaint, the court entered a summary judgment in favor of all defendants on the claims asserted in the original complaint.
Callens appeals the trial court's dismissal of her amended complaint and the summary judgment for JCNH, Jefferson County, and its Commission and Commissioners entered on her original complaint. *Page 277 
Callens does not appeal as to her claims against Commissioner Jeff Germany (see note 2), Augmentation, and Cox.
 II. Dismissal of the Amended Complaint A. Survival of the Cause of Action
The defendants involved in this appeal (JCNH and Jefferson County and its Commission and Commissioners) argue that the personal-injury claims are barred because the amended complaint, seeking damages for Presley's personal injury, was not filed before Presley's death. According to §6-5-462, Ala. Code 1975, personal-injury claims do not survive the death of a plaintiff unless an action has been filed before the plaintiff's death. Presley died on May 9, 1996; Callens filed her amended complaint on June 18, 1998. However, on April 2, 1996 (and allegedly on December 9 and 30, 1996), acting pursuant to § 6-5-20, Ala. Code 1975, Callens filed a notice of claim with the Jefferson County Commission based on her mother's December 11, 1995, injury.[3] Section 6-5-20 provides, in pertinent part:
 "(a) An action must not be commenced against a county until the claim has been presented to the county commission, disallowed or reduced by the commission and the reduction refused by the claimant.
 "(b) The failure or refusal of such a county commission to enter upon its minutes the disallowance or reduction of the claim for 90 days is a disallowance."
The effect of this statute is that a claimant may not commence an action "against a county until the claim is presented to and disallowed by the county commission." Marshall County v. Uptain, 409 So.2d 423, 425 (Ala. 1981). The statutory requirement of presenting a claim to the county commission is a condition precedent to filing a lawsuit against the county. Williams v. McMillan, 352 So.2d 1347 (Ala. 1977).
By complying with § 6-5-20, Callens took the appropriate action to allow the personal-injury claims to survive Presley's death. InGroeschner v. County of Mobile, 512 So.2d 70 (Ala. 1987), a person who had suffered injuries in an automobile accident filed a claim with the county commission pursuant to § 6-5-20. He died of unrelated causes after the expiration of the 90-day period allowed for the commission to act on the claim. Immediately after his death (which occurred some 30 days after the running of the 90-day period), an action was filed based on his personal injuries. This Court held that by complying with §6-5-20, the injured person "had taken appropriate action to meet the requirement that he first present his claim to the county commission before filing suit against the county." Id. at 72. Moreover, because he took that action, he was deemed to have satisfied the requirement of § 6-5-462, so that his personal-injury action survived his death.Id.
In this case, Callens, as Presley's guardian, filed a notice of claim with the Jefferson County Commission in April 1996, more than one month before Presley died. Because Presley died before the 90-day statutory period had expired, her case is even stronger than was the plaintiff's case in Groeschner; the claims made on her behalf had not been disallowed by the Jefferson County Commission (or deemed disallowed) at the time of her death. Section 6-5-20 prevented Callens or Presley from filing a lawsuit against the county until the Commission had acted on the notice or until the expiration of the 90-day statutory period. Callens's filing a notice of claim with the Jefferson County Commission was sufficient to constitute a filing within the meaning of § 6-5-462; therefore, the personal-injury claim asserted on behalf of *Page 278 
Presley in Callens's amended complaint survived Presley's death.
 B. Statute of Limitations
Callens argues that the trial court erred in dismissing her amended complaint on the grounds that it was barred by the statute of limitations. In that amended complaint, Callens, in her capacity as personal representative, sought damages for personal injuries to Presley. Although a claim alleging personal injury is subject to a two-year statute of limitations, § 6-2-38(l), Ala. Code 1975, the personal-injury claims stated in Callens's amended complaint relate back to the date she filed her original complaint because the allegations in the amended complaint arise out of the same "conduct, transaction, or occurrence" as the claims stated in the original complaint. Rule 15(c)(2), Ala.R.Civ.P., provides:
 "(c). . . An amendment of a pleading relates back to the date of the original pleading when
". . . .
 "(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . . "
In her amended complaint, Callens alleged that Presley's personal injuries were caused on December 11, 1995, by actions of JCNH, Augmentation, and Cox. Callens's claims stated in her original complaint alleging wrongful death, civil conspiracy, breach of contract, and the tort of outrage also arose out of events of December 11, 1995.
Callens's claims in the amended complaint alleging negligent hiring, training, and supervision that she alleges resulted in personal injury to Presley would relate back under Rule 15(c)(2), Ala.R.Civ.P., if those claims arose out of the same "conduct, transaction, or occurrence" as that alleged in the original complaint, i.e., the December 11, 1995, injury to Presley. JCNH, Augmentation, and Cox moved to dismiss these claims; the trial court granted the motion. A court should not grant a motion to dismiss unless, under the allegations of the complaint, the plaintiff can prove no set of facts under which she would be entitled to relief. Thermal Components, Inc. v. Golden, 716 So.2d 1166, 1167 (Ala. 1998). From the allegations of the complaint, it was possible that the negligent acts related to hiring, training, and supervising could have occurred on the date of Presley's injury and could have related back to the date of the original complaint. We reverse the trial court's dismissal of these claims.
 III. Summary Judgment
Callens argues that the trial court improperly entered a summary judgment on the original complaint, in favor of JCNH and Jefferson County and its Commission and Commissioners. She complains only as to her claims alleging civil conspiracy, breach of contract, and the tort of outrage; she did not appeal as to the wrongful-death claim.
Our standard for reviewing a summary judgment is well settled. A summary judgment is proper if there was no genuine issue of material fact and the movant was entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. The defendants, as the parties moving for a summary judgment, had the burden of making a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law. Long v. Jefferson County, 623 So.2d 1130 (Ala. 1993). If the defendants made that showing, then the burden shifted to Callens to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against her. Id. In deciding whether the evidence created a genuine issue of material fact, we view the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Id. In determining whether the nonmovant has created a genuine issue of material *Page 279 
fact, we apply the "substantial-evidence rule" — evidence, to create a genuine issue of material fact, must be "substantial." §12-21-12(a), Ala. Code 1975. "Substantial evidence" is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989).[4]
 A. Callens's Breach-of-Contract Claim
In her original complaint, Callens, in her individual capacity, alleged that JCNH contracted with her to provide care and treatment for her mother and to preserve her mother's dignity. Callens states that she suffered damage as a result of the breach of contract. When JCNH moved for a summary judgment on Callens's breach-of-contract claim, it argued only that Callens's "claim sounds in tort, not in contract" and that her sole remedy is a wrongful-death action based on a claim of medical negligence. In opposition to JCNH's motion for a summary judgment, Callens submitted her affidavit and a series of documents that she characterized as a "contract" between her and JCNH.[5] These documents included an estimate of costs for a Medicaid patient (Exhibit A to her affidavit) and a description of the items and services included in the nursing home's daily pay rate for private-pay residents (Exhibit B to her affidavit). The description of items included in the rates for private-pay residents included "[l]inen, housekeeping and maintenance services to ensure a safe, clean and comfortable environment." In her affidavit, Callens stated:
 "During her stay in Jefferson County Nursing Home, [Presley] was forced to live in unsafe and unsanitary conditions; she was relegated to an ant infested bed; she was frequently dressed in unclean and urine soiled clothing; her unit smelled of urine; and her unit was infested with flies."
Callens also included these allegations in her complaint.
JCNH did not respond to Callens's submission in opposition to the summary-judgment motion. The trial court entered a summary judgment for JCNH, stating that Callens had not presented evidence indicating that Presley's death was caused by the alleged negligence. On appeal, Callens argues that the trial court erred in entering the summary judgment on her claim, made in her individual capacity, for damages for breach of contract. She again refers to the evidence in her affidavit regarding unsanitary conditions that, according to her affidavit, indicate a breach of contract. While Callens does not specifically draw our attention to the aforementioned portion of Exhibit B that says Presley would be ensured a "safe, clean and comfortable environment," it is part of the materials she submitted in the trial court as evidence of her contract. JCNH's only response is the same argument it made in the trial court — that Callens's claim arises in tort, not in contract. JCNH does not controvert the plaintiff's claim of contamination, nor does it argue that the referenced portion of Exhibit B does not create an express contract sufficient to take this case beyond the realm of cases where a duty is only implied from a contract lacking specificity as to the manner of performance. See Wilkerson v. Mosley, 18 Ala. 288 (1850), cited with approval in Eidson v. Johns-Ridout's Chapels, Inc., 508 So.2d 697 (Ala. 1987). The Wilkerson court *Page 280 
provided an example that is helpful in this case. A contract to ride a horse to a specified place cannot support an action in contract if the rider's excessive speed kills the horse, because the contract only implies a duty to ride at a moderate speed. On the other hand, a contract to ride a horse to a specified place at a reasonable speed would give rise to a claim for breach of contract if the rider rode at an excessive speed. Wilkerson, 118 Ala. at 291. In this present case, the duty to maintain sanitary conditions is expressed in the contract; therefore, a breach of that duty is actionable in contract. We reverse the summary judgment insofar as it related to Callens's breach-of-contract claim.
 B. Callens's Civil-Conspiracy Claims
Callens claims the summary judgment was improper as to her civil-conspiracy claims. As previously noted, Callens asserted these claims in her individual and representative capacities, seeking damages based on harm she incurred and on the alleged wrongful death of Presley. "`A civil conspiracy requires a combination of two or more individuals to accomplish a lawful end by unlawful means.'" Drill Parts Serv. Co. v.Joy Mfg. Co., 619 So.2d 1280, 1290 (Ala. 1993) (quoting Nelson v.University of Alabama System, 594 So.2d 632, 634 (Ala. 1992)). A plaintiff alleging a conspiracy must have a valid underlying cause of action. Id. "[A] conspiracy claim must fail if the underlying act itself would not support an action." Triple J Cattle, Inc. v. Chambers,621 So.2d 1221, 1225 (Ala. 1993).
1. Callens's Claim Alleging a Conspiracy to Engage in FraudulentSuppression
Callens, in her individual capacity, argues that she presented substantial evidence indicating that the defendants engaged in a civil conspiracy to commit fraud, negligence, and wantonness when they withheld information about the cause of Presley's hip injury, telling Callens that Presley had injured her knee.
Callens's argument on this issue is devoted exclusively to her claim of fraudulent suppression. We therefore do not address her theories of a civil conspiracy to engage in negligence and wantonness. To prove fraudulent suppression, a plaintiff must show "(1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff." Booker v. United AmericanIns. Co., 700 So.2d 1333, 1339 n. 10 (Ala. 1997). Callens has not shown the materiality of the facts she alleges the defendants suppressed from her. "A `material fact'. . . is a fact of such a nature as to induce action on the part of the complaining party." Bank of Red Bay v. King,482 So.2d 274, 282 (Ala. 1985).
Callens's complaint alleges that, because of the defendants' alleged suppression, she suffered loss or harm because she lost her mother and because, she says, she suffered shame, embarrassment, and extreme mental and emotional upset. Callens did not produce substantial evidence indicating that the defendants suppressed a material fact; she did not show, nor did she allege, that an act or statement of the defendants induced her to act. She also did not allege that her mother would have lived if the defendants had not concealed facts from her or that, but for the alleged concealment, her course of conduct would have been different. In addition, Callens did not show that the defendants' alleged concealment of material facts, or the defendants' alleged actions, resulted in her mother's death. She produced no expert testimony indicating that the defendants' allegedly fraudulent conduct caused Presley's death or caused Callens's alleged embarrassment.[6] We affirm the summary *Page 281 
judgment insofar as it related to Callens's claim alleging a conspiracy to engage in fraudulent suppression.
2. Callens's Claim Alleging a Conspiracy to Commit Acts Resulting inPresley's Wrongful Death
In her representative capacity, Callens alleges that the defendants conspired to commit acts that caused the wrongful death of Presley. This claim must fail, because the trial court entered a summary judgment for the defendants on Callens's wrongful-death claim, on the basis that Callens could not prove causation. (See note 6.) Because Callens did not appeal the summary judgment as it related to her wrongful-death claim, she does not have a valid underlying cause of action to support her conspiracy claim. Triple J Cattle, 621 So.2d at 1225. We affirm the summary judgment insofar as it related to Callens's claim alleging a conspiracy to commit acts resulting in Presley's death.
 C. Callens's Claim Alleging the Tort of Outrage
Callens, in her individual capacity, argues that the trial court erred in entering the summary judgment for the defendants on her claim alleging intentional infliction of emotional distress — the tort of outrage. In order to prevail on this claim, Callens must prove (1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it. American Road Serv.Co. v. Inmon, 394 So.2d 361 (Ala. 1980); Jackson v. Alabama Power Co.,630 So.2d 439 (Ala. 1993). This Court has recognized the tort of outrage in three areas: (1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment. See Thomas v. BSEIndus. Contractors, Inc., 624 So.2d 1041 (Ala. 1993). This Court has limited the outrage cause of action to egregious circumstances. Although we in no way condone the defendants' alleged conduct, we conclude, after reviewing the evidence in a light most favorable to Callens, that their alleged behavior was not so extreme as to reach the level necessary to constitute the tort of outrage. We affirm the summary judgment as it relates to Callens's tort-of-outrage claim.
 IV. Conclusion
As to Callens's claims made in her individual capacity, we affirm the summary judgment on her claims in the original complaint alleging civil conspiracy and the tort of outrage, and we reverse the summary judgment as it relates to Callens's breach-of-contract claim stated in the original complaint. As to Callens's claims in her representative capacity, we affirm the summary judgment as it relates to her claim in the original complaint alleging civil conspiracy, and we reverse the order dismissing Callens's claims, stated in the amended complaint, alleging personal injury to Presley; we also reverse the dismissal of Callens's claims, stated in the amended complaint, alleging negligent hiring, training, and supervision. We remand the cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
[1] Callens also claims that she filed notices of claim with the Jefferson County Commission on December 9 and 30, 1996.
[2] Callens's complaint also specifically names Commissioner Jeff Germany; the complaint does not explain why she named him specifically.
[3] While the notices of claim Callens says she filed are not in the record before us, we view Callens's allegations in her complaint as true for purposes of reviewing the sufficiency of her complaint. This Court has held that appellate courts "must review motions to dismiss in the light most favorable to the plaintiff, resolving all reasonable doubts in his favor." Thermal Components, Inc. v. Golden, 716 So.2d 1166, 1167
(Ala. 1998).
[4] We note that this present case was pending in this Court at the time this Court decided Ex parte General Motors Corp.,769 So.2d 903 (Ala. 1999). The summary-judgment standard established in Ex parte General Motors Corp. is to be applied prospectively only.
[5] In her complaint, Callens "makes claims against Defendants Jefferson County, Alabama, its Commission and Commissioners, including Jeff Germany, and Jefferson County Nursing Home for compensatory damages resulting from the breach of contract." Callens offered no evidence of a contract between her and any defendant other than JCNH.
[6] Insofar as it related to the wrongful-death claim, the summary judgment was based upon the plaintiff's failure to present proof of causation by expert testimony. As noted in the first paragraph of Part III, Callens did not appeal the summary judgment as it related to the wrongful-death claim. *Page 282