STUART, Justice.
John Woodruff appeals the order of the Tuscaloosa Circuit Court dismissing his malicious-prosecution, false-imprisonment, and tort-of-outrage claims against the City of Tuscaloosa (“the City”) and several of its employees. We affirm.
I.
On October 16, 2006, Woodruff went to the Tuscaloosa Police Department headquarters to resolve a warrant that had been sworn against him for harassing communications. See § 13A-11-8, Ala.Code 1975 (describing what constitutes the Class C misdemeanor offense of harassing communications). After presenting himself, Woodruff was arrested and handcuffed by Tuscaloosa police officer Brian Canterbury and told to wait until another officer could arrive to complete the booking process.
*751 While waiting in the public lobby of police headquarters, Woodruff became involved in a verbal altercation with Carrie Summers, an off-duty Tuscaloosa police officer, and he was subsequently charged by Officer Canterbury with disorderly conduct, another Class C misdemeanor. See § 13A-11-7, Ala.Code 1975. Woodruff was thereafter booked and transported to the county jail, where he was released on bond later that night. On October 19, 2006, Woodruff returned to the Tuscaloosa Police Department to file a written complaint regarding the events surrounding his arrest and booking on October 16. The Tuscaloosa Police Department ultimately determined that Woodruffs complaint was without merit.
On November 15, 2006, Woodruff was convicted of disorderly conduct in the Tuscaloosa Municipal Court. Woodruff thereafter sought a trial de novo on the charge in the Tuscaloosa Circuit Court; however, in December 2008, while the matter was still pending, Woodruff and the City apparently reached an agreement to nol-pros the charge if Woodruff would undergo counseling. On January 2, 2009, the disorderly-conduct charge was formally dropped.
On January 3, 2011, Woodruff filed the instant action alleging malicious prosecution, false imprisonment, and the tort of outrage against the City, Officers Canterbury and Summers, eight other Tuscaloosa police officers who either were present during his arrest and booking on October 16, 2006, or were involved in the subsequent investigation of his complaint stemming from those events, and three other municipal employees of the City whose specific involvement is unclear (the City and the individual defendants are hereinafter referred to collectively as the “the City defendants”). On January 25, 2011, Officer Canterbury filed a motion to dismiss the claims asserted against him, and the other individual defendants jointly filed a separate motion to dismiss the claims asserted against them. On January 31, 2011, the City filed its own motion to dismiss. However, the City did not serve Woodruff with a copy of its motion to dismiss, apparently as the result of an oversight based on the fact that Woodruff was proceeding pro se and was not registered to receive electronic copies of court filings. On March 30, 2011, Woodruff moved the trial court to enter a default judgment against the City based on its failure to serve him with any pleadings or motions since the inception of the action. The next day the City filed a response opposing that motion, which it served by mail on Woodruff, along with a copy of its original motion to dismiss.
On May 31, 2011, the trial court conducted a hearing on the City defendants’ motions to dismiss and Woodruffs motion seeking a default judgment against the City, along with another motion filed by Woodruff objecting to filings made by the City defendants that, Woodruff alleged, improperly contained personal information about him such as his Social Security number, date of birth, and driver’s license number. On October 12, 2011, the trial court entered an order granting the City defendants’ motions to dismiss and declaring all other pending motions moot. Woodruff filed his notice of appeal to this Court on November 23, 2011.
II.
We explained the standard of review applicable to an appeal of a trial court’s judgment granting a motion to dismiss in Crosslin v. Health Care Authority of Huntsville, 5 So.3d 1193, 1195 (Ala.2008):
“In considering whether a complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6), Ala. R. Civ. *752 P., a court ‘must accept the allegations of the complaint as true.’ Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002) (emphasis omitted). 1 “The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief.” ’ Smith v. National Sec. Ins. Co., 860 So.2d 343, 345 (Ala.2003) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)). In determining whether this is true, a court considers only whether the plaintiff may possibly prevail, not whether the plaintiff will ultimately prevail. Id. Put another way, ‘ “a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.” ’ Id. (emphasis added).”
III.
Woodruff argues that the City defendants’ motions to dismiss lacked merit and should have been denied for that reason; however, he further argues that the trial court lacked jurisdiction to even consider the City’s motion to dismiss, and we first consider this jurisdictional argument. Citing Nichols v. Pate, 992 So.2d 734 (Ala.Civ.App.2008), Woodruff argues that the City’s failure to serve him with its motion to dismiss deprived the trial court of jurisdiction to consider that motion. We disagree. In Nichols, the Court of Civil Appeals held that “[t]he failure to effect proper service under Rule 4, Ala. R. Civ. P., deprives the trial court of personal jurisdiction over the defendant....” 992 So.2d at 736. However, in this case, personal jurisdiction over the parties is not an issue — Woodruff initiated the lawsuit, and there is no question that he properly served the City. Personal jurisdiction over the parties was thus established, and the trial court had jurisdiction to consider timely filed motions in the action. See also McConico v. McKibben, 581 So.2d 829, 829 (Ala.1991) (affirming the trial court’s judgment of dismissal where the plaintiff had failed to cite any authority to support his argument that he had a valid cause of action based on the defendant’s alleged failure to serve him with a copy of a summary-judgment motion in a previous action between the parties).
Of course, pursuant to Rule 5(a), Ala. R. Civ. P., “every written motion other than one which may be heard ex parte” must be served upon the opposing party, and due-process requirements could prevent a trial court from ruling on a motion that had not been properly served in accordance with Rule 5, even though personal jurisdiction over the parties had been established. See, e.g., Neal v. Neal, 856 So.2d 766, 782 (Ala.2002) (stating that a person already made a party to litigation could, “on some critical motion or for some critical proceeding within that litigation,” be deprived of the due process required by the Fourteenth Amendment to the United States Constitution if he or she is not provided with “notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing”). In this case, however, although the City unquestionably erred in not serving its motion to dismiss upon Woodruff when it was filed on January 31, 2011, it subsequently remedied that error by mailing Woodruff a copy of the motion on March 31, 2011, when it became aware of the error. The trial court did not thereafter hold a hearing on the motion to dismiss until May 31, 2011, and Woodruff has not, and cannot, maintain that he did not receive adequate time to consider and re *753 spond to the arguments made by the City in its motion to dismiss in light of that two-month interval.[1] The trial court acted within its authority in considering the City’s motion to dismiss.
We thus turn to Woodruffs argument that the trial court erred in granting the City defendants’ motions to dismiss because, he alleges, those motions lacked merit. Woodruff asserted three claims against the City defendants — malicious prosecution, false imprisonment, and the tort of outrage. The City defendants argue that, even when Woodruffs allegations are viewed in the light most favorable to him, it would be impossible for him to prevail on any of these claims. For the reasons that follow, we agree.
In order to succeed on his malicious-prosecution claim, Woodruff ultimately needed to prove that the City defendants instigated his prosecution for disorderly conduct “without probable cause and with malice; that the prior proceeding ended in favor of [Woodruff]; and that [he] was damaged thereby.” Fina Oil & Chem. Co. v. Hood, 621 So.2d 253, 256 (Ala.1993). In Gunter v. Pemco Aeroplex, Inc., 646 So.2d 1332, 1333 (Ala.1994), this Court considered an appeal based on facts similar to those of the present case: the appellant had been convicted of disorderly conduct in a municipal court, appealed that conviction to the circuit court, and then the charge against him was nol-prossed before the circuit court conducted a trial de novo on the charge. The appellant subsequently initiated a malicious-prosecution action that ultimately resulted in a summary judgment being entered against him. Id. In affirming that summary judgment, this Court held that the appellant would be unable to show that the proceedings on the disorderly-conduct charge had been instigated without probable cause because “[his] conviction [in the municipal court] is prima facie evidence of probable cause for instituting the prosecution, even though the conviction was later vacated.” 646 So.2d at 1333 (citing Brown v. Parnell, 386 So.2d 1137, 1139 (Ala.1980)). The reasoning behind this proposition was explained in Ex parte Kemp, 202 Ala. 425, 425-26, 80 So. 809, 809-10 (1919):
“ ‘The true and logical reason why a conviction reversed on appeal and the defendant discharged is relevant evidence on the issue of probable cause is, not that the judgment imports absolute verity; for after the reversal and discharge there is in fact and law no judgment. The true reason, as stated in the case of Nehr v. Dobbs, 47 Neb. 863, 66 N.W. 864 [ (1896) ], is the fact that ordinarily, if a court having jurisdiction has upon a full and fair trial proceeded to conviction, it must have had before it such evidence as would convince a prudent and reasonable man of the guilt of the accused. Therefore, while a subsequent reversal may show that the accused was in fact innocent, yet it does not show that there was no probable cause for believing him guilty.’ ”
(Quoting Skeffington v. Eylward, 97 Minn. 244, 247, 105 N.W. 638, 639 (1906).) Although Woodruff makes the generic statement in his brief that the conviction in the *754 municipal court was plainly in error, he does not allege or argue that that conviction does not establish probable cause. Based on the undisputed facts of the case, Woodruff could not prevail on the malicious-prosecution claim he asserted against the City defendants, and the trial court’s dismissal of that claim was accordingly proper.[2]
The facts alleged by Woodruff in support of his false-imprisonment claim similarly indicate that he could not prevail on that claim. The gravamen of Wood-ruffs false-imprisonment claim is that he was falsely imprisoned as a result of the disorderly-conduct charge because, he alleges, that charge was unwarranted. Regardless of the basis for the disorderly-conduct charge, however, it is undisputed that Woodruff went to the Tuscaloosa Police Department to resolve a warrant that had been sworn against him for harassing communications and that, after presenting himself, he was arrested and handcuffed by Officer Canterbury. While waiting to complete the booking process, he thereafter became involved in a verbal altercation, which led to his being charged with disorderly conduct as well. Importantly, however, at the time Woodruff was charged with disorderly conduct he was already under arrest and in custody based on the harassing-communications warrant. Although Woodruff disputes the basis for his disorderly-conduct charge, he has not argued that the harassing-communications warrant was invalid, and “[t]he law in Alabama is clear that a plaintiff is not entitled to recover for false arrest or imprisonment where he or she is arrested pursuant to a valid warrant issued by a lawfully authorized person.” Ennis v. Beason, 537 So.2d 17, 19 (Ala.1988) (citing Blake v. Barton Williams, Inc., 361 So.2d 376 (Ala.Civ.App.1978)). Woodruff therefore was not deprived of his personal liberty as a result of the disorderly-conduct charge because he was already under arrest and in custody at the time he was charged with disorderly conduct; accordingly, the trial court’s dismissal of Woodruffs false-imprisonment claim against the City defendants was proper. See also Crutcher v. Wendy’s of North Alabama, Inc., 857 So.2d 82, 91 (Ala.2003) (“Section 6-5-170[, Ala.Code 1975,] provides: ‘False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.’ ”).
Finally, Woodruff argues that the trial court erred by dismissing his tort-of-outrage claim. This claim is not directly based on Woodruffs prosecution for disorderly conduct; rather, Woodruff bases it on the “outrage” he alleges the entire community feels toward the City and the Tuscaloosa Police Department as a result of what he says is their pattern and practice of failing to properly investigate complaints of misconduct committed by Tuscaloosa police officers, including their alleged misconduct surrounding his own complaint regarding his treatment on October 16, 2006. Citing Callens v. Jefferson County Nursing Home, 769 So.2d 273 (Ala.2000), Woodruff acknowledges that this Court has not recognized the tort of outrage in this context, but he nevertheless argues that, because this Court judicially created the tort-of-outrage cause of action — as opposed to the legislature’s creating it by statute — this Court could expand it to en *755 compass the facts presented here. Accordingly, he argues, the trial court erred by dismissing his claim.
Woodruff is correct in noting that the fact this Court has recognized the tort of outrage in only certain limited circumstances does not foreclose us from recognizing it in other circumstances. However, this fact does not require every trial court to systematically refrain from dismissing any tort-of-outrage claim so that we may judge it in the first instance. Indeed, it is generally the duty of a trial court to first consider all issues raised by the parties, and only after the trial court has done so is review by an appellate court possible. Accordingly, trial courts are empowered to dismiss tort-of-outrage claims where appropriate, and both this Court and the Court of Civil Appeals have affirmed their judgments doing so. See, e.g., Gibson v. Abbott, 529 So.2d 939, 942 (Ala.1988) (affirming the trial court’s dismissal of the appellant’s slander and “outrageous conduct” claims), and Thomas v. Williams, 21 So.3d 1234, 1240 (Ala.Civ.App.2008) (“[W]e agree with [the appellee] that, with regard to [the appellant’s] tort-of-outrage claim, [she] failed to state a claim upon which relief could be granted, and we affirm the trial court’s dismissal of that claim.”).[3]
Of course, a party aggrieved by a trial court’s decision to dismiss his or her tort-of-outrage claim may, like Woodruff, seek appellate review of that decision, and the appropriate appellate court will then determine whether, when the appellant’s allegations are viewed in the most favorable light possible, he or she could possibly prevail on that tort-of-outrage claim. It is apparent in this case that Woodruff could not. In Callens, we explained that a plaintiff alleging the tort of outrage must prove:
“(1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants’ conduct was extreme and outrageous; and (3) that the defendants’ conduct caused emotional distress so severe that no reasonable person could be expected to endure it.”
769 So.2d at 281. However, when, at the hearing conducted by the trial court on May 31, 2011, the attorney for the individual defendants argued that they were entitled to discover Woodruffs medical records based on his claim, inherent in his tort-of-outrage claim, that he had suffered extreme emotional distress, Woodruff was adamant that he had neither claimed nor suffered extreme emotional distress, stating:
“I would like [the individual defendants’ attorney] to go ahead and provide the court with a single paragraph in my complaint that alleges emotional distress or mental anguish. I will give him a chance to find that while I am responding. ... I don’t claim that was the infliction on me of severe emotional distress .... It’s not that I was personally beat down and broken to the point I couldn’t get out of bed in the morning because of the depression. It’s an outrage and anger at the City’s policies. That’s not severe emotional anguish nor is it the intent of this individual.... Again, I am waiting for the city to come up with a paragraph where I allege emotional distress or mental anguish.... It is [the City’s] custom and practice, not so much that I personally suffered some type of emotional anguish or severe emotional distress, it is the fact they won’t investigate it.”
*756 In light of the fact that Woodruff has taken the clear position that he did not suffer emotional distress, he cannot prevail on his tort-of-outrage claim because the tort of outrage cannot exist in the absence of extreme emotional distress. Indeed, a tort-of-outrage claim is alternately referred to as a claim of intentional infliction of emotional distress. Ex parte Lumbermen’s Underwriting Alliance, 662 So.2d 1133, 1134 (Ala.1995). Accordingly, the trial court did not err in dismissing Wood-ruffs tort-of-outrage claim.
IV.
Woodruff sued the City and several of its police officers and employees, alleging malicious prosecution, false imprisonment, and the tort of outrage. The trial court entered a judgment dismissing his claims and, because it is evident that he has not stated against any of the City defendants a claim upon which relief could be granted, we affirm that judgment.
AFFIRMED.
PARKER, SHAW, MAIN, and WISE, JJ., concur.
MALONE, C.J., recuses himself.

. For comparison, 10 days is considered sufficient time for a party to have a meaningful opportunity to respond to a summary-judgment motion. See, e.g., Hill v. Chambless, 757 So.2d 409, 411 (Ala.2000) (“Rule 56(c)(2)[, Ala. R. Civ. P.,] establishes the notice requirement for summary-judgment motions. In order to ensure that an opposing party has a meaningful opportunity to respond, this rule requires that the trial court must allow a minimum of 10 days to pass between the date the hearing is set and the date of the actual hearing, unless the parties agree otherwise.”).

. In their brief, the City defendants argue that the trial court's dismissal of the malicious-prosecution claim, as well as Woodruff’s other claims, was proper for additional reasons not discussed in this opinion. However, the correctness of the trial court's dismissal of these claims being established, we need not address those other arguments, regardless of their possible merit.

. These cases also refute Woodruff's argument that all tort-of-outrage cases require findings of fact and should therefore be decided by a jury.