828 So.2d 280 (2002)
Timothy BASSIE, as personal representative of Deborah Bassie, deceased
v.
OBSTETRICS & GYNECOLOGY ASSOCIATES OF NORTHWEST ALABAMA, P.C., Dr. M.H. Aldridge, and Dr. B.J. Moody.
1001685.
Supreme Court of Alabama.
March 8, 2002.
*281 D. Leon Ashford, Bruce J. McKee, and Michael D. Ermert of Hare, Wynn, Newell & Newton, Birmingham; and Debra Mestre of Mestre & Kelley, Birmingham, for appellant.
Walter W. Bates, Scott M. Salter, and Joseph L. Reese, Jr., of Starnes & Atchison, L.L.P., Birmingham, for appellees Obstetrics & Gynecology Associates of Northwest Alabama, P.C., and Dr. M.H. Aldridge.
John S. Key and Jenny L. McLeroy of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellee Dr. B.J. Moody.
MOORE, Chief Justice.
The issue on appeal is whether a personal-injury action may be maintained on behalf of a plaintiff who has been declared "brain dead" under § 22-31-1, Ala.Code 1975, as it read before it was amended effective July 1, 2000. We affirm the summary judgment for the defendants.
In January 2000, Deborah Bassie was admitted to Eliza Coffee Memorial Hospital for the delivery of her child. She suffered complications during the delivery and died. There is no dispute that Deborah was "brain dead," as that condition is defined by former § 22-31-1, Ala.Code 1975, before personal-injury claims were filed on her behalf on April 14, 2000. Mechanical ventilation and cardiac support were removed on April 21, 2000; Deborah's cardiac and respiratory functions then ceased.
In the April 14, 2000, action, Timothy Bassie ("Bassie"), as her husband and next friend, alleged that the defendants had been negligent and/or wanton, and that their negligence and/or wantonness had caused Deborah's personal injuries that ultimately led to her death. The defendants included two of Deborah's doctors, M.H. Aldridge, M.D., and B.J. Moody, M.D., and Obstetrics & Gynecology Associates of Northwest Alabama, P.C. On December 8, 2000, Bassie amended his complaint to add a claim for wrongful death.
The defendants filed a motion for a summary judgment as to the personal-injury claims. After a hearing on April 25, 2001, *282 the trial court issued an order on May 9, 2001; that order stated, in relevant part:
"It appears that there is no dispute that the plaintiff had suffered a `brain death' prior to the filing of the action. Alabama Code Section 22-31-1 therefore declares that she was `medically and legally dead.' Therefore, the plaintiff had died for legal purposes prior to the filing of the suit for the personal injury claims."
Accordingly, the trial court entered a "partial summary judgment ... to the defendants with respect to the personal injury claims of Deborah Bassie and these claims are dismissed." The trial court certified the judgment as final. See Rule 54(b), Ala. R. Civ. P.
On appeal, Bassie claims the trial court erred in holding that the fact that Deborah was "brain dead" for purposes of former § 22-31-1 precluded his pursuing the personal-injury claims on her behalf. Bassie argues that, rather than the definition of death in former § 22-31-1, the common-law definition of death should prevail, or, in the alternative, that the intent of former § 22-31-1 was not to determine the timeliness or viability of a personal-injury action; to read it to do so, he argues, produces the "absurd result" that a "brain-dead" patient could incur medical expenses but lack the right to bring a cause of action to recover those medical expenses from an alleged tortfeasor. The defendants argue that the plain and unambiguous language of former § 22-31-1 compels the conclusion that "death" within that statutory definition precludes the filing of a personal-injury claim on behalf of the deceased, regardless of the purported absurdity of any result.
In Alabama, a deceased's unfiled tort claims do not survive the death of the putative plaintiff. Section 6-5-462, Ala. Code 1975; see also Georgia Cas. & Surety Co. v. White, 582 So.2d 487, 491 (Ala. 1991). When Bassie filed this action and Deborah was on life-support equipment, her "death" was determined according to § 22-31-1:
"(a) A person is considered medically and legally dead if, in the opinion of a medical doctor licensed in Alabama, based on usual and customary standards of medical practice, in the community, there is no spontaneous respiratory or cardiac function and there is no expectation of recovery of spontaneous respiratory or cardiac function.
"(b) In the case when respiratory and cardiac function are maintained by artificial means, a person is considered medically and legally dead if, in the opinion of a medical doctor licensed in Alabama, based on usual and customary standards of medical practice in the community for the determination by objective neurological testing of total and irreversible cessation of brain function, there is total and irreversible cessation of brain function. Death may be pronounced in this circumstance before artificial means of maintaining respiratory and cardiac function are terminated. In the case described in this subsection, there shall be independent confirmation of the death by another medical doctor licensed in Alabama."
Section 22-31-1, Ala.Code 1975, as it read before the amendment effective July 1, 2000.[1] Bassie admits that when he filed *283 this action Deborah was "dead" for purposes of the statute but protests that the Legislature "could not possibly have intended the result dictated" in this case. (Appellant's Brief at 6.)
"In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature." DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala. 1998).
"`The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says.'"
Ex parte University of South Alabama, 761 So.2d 240, 243 (Ala.1999), quoting Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala.1996) (citations omitted).
When we apply these fundamental rules of statutory interpretation to the present case, we reach the same result the trial court reached. Section 6-5-462 does not permit the filing of a personal-injury claim on behalf of a person after he or she is dead. Section 22-31-1 as it read at all times pertinent to this action plainly stated that, even "when respiratory and cardiac function are maintained by artificial means," a person is "medically and legally dead if ... there is total and irreversible cessation of brain function." § 22-31-1(b) (emphasis added). Additionally, a physician may use "other procedures based on accepted medical standards for determining death as the exclusive basis for pronouncing a person dead." Section 22-31-2, Ala.Code 1975.[2] Bassie concedes that Deborah was "dead" for purposes of the statute before he filed his action; however, he cannot, and does not, offer any statutory exceptions to § 22-31-1, nor does he offer any Alabama cases that would allow the action to survive. Thus, the personal-injury claims do not survive, because they were filed after Deborah's "death."
Bassie argues, however, that the plain meaning of former § 22-31-1 should not be used to determine death for purposes of the timeliness and viability of a personal-injury claim. First, Bassie argues that the common-law definition of death did not contemplate "brain death"; instead, it focused on the cessation of all cardiac and pulmonary functions. Because Alabama is a common-law state, Bassie concludes, Deborah was not "dead" when her personal-injury action was filed because her cardiac and pulmonary systems were still functioning, albeit mechanically. Second, Bassie argues that the Legislature, by enacting § 22-31-1, did not intend to "impact upon the issue of when a human being has the capacity to commence a personal injury lawsuit." (Appellant's Brief at 12.) He argues that to hold otherwise, as the trial court did, produces the "absurd result" that a "brain-dead" patient could accrue medical costs for life support but could not file an action to recover those costs.
Bassie's attempts to interpret former § 22-31-1 other than by its plain language *284 are unavailing. As Bassie correctly explains, Alabama has adopted "[t]he common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state ...." Section 1-3-1, Ala.Code 1975 (emphasis added). Even if we were to assume that, as Bassie claims, death was defined by the common law as the cessation of cardiac and pulmonary function, former § 22-31-1, in no uncertain terms, provides the statutory definition of death, "medically and legally." Any common-law definition to the contrary was, therefore, abrogated by the adoption of § 22-31-1.
Bassie's speculative contention that the Legislature did not intend the result in this case iseven if relevantunconvincing. We do not consider the statutory language of § 22-31-1 to be ambiguous,[3] nor does there exist an exception, for purposes of filing a personal-injury claim or for other purposes, to declaring a person "medically and legally" dead as provided therein. "`Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive.'" Ex parte University of South Alabama, 761 So.2d at 243, quoting Ex parte State Dep't of Revenue, 683 So.2d at 983.
This Court cannot presume, as Bassie would have us do, that the Legislature did not intend for § 22-31-1 to define death for purposes of filing a personal-injury claim. "It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law." Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998). We must presume, therefore, that the Legislature, when it enacted § 22-31-1 in 1979, was aware of § 6-5-462, supra, which allows "personal claims upon which an action has been filed" to survive in favor of the deceased's personal representative. (Emphasis added.) If the Legislature were inclined to permit a personal-injury claim to be filed after a person was declared "brain dead," it wasand is free to so provide. This Court, however, will not judicially insert exceptions to a statute whose language is clear. Like the language of § 22-31-1, this Court's duty is clear:
"[I]t is our job to say what the law is, not what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers."
DeKalb County LP Gas Co., 729 So.2d at 276.
The trial court did not err in holding that, under the plain meaning of § 22-31-1 as it read at the time, Deborah Bassie was "medically and legally dead," and that, therefore, she had died for legal purposes before her personal-injury claims were filed. Accordingly, we affirm the trial court's summary judgment as to the personal-injury claims.
AFFIRMED.
SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
HOUSTON, J., concurs specially.
*285 HOUSTON, Justice (concurring specially).
"Oh, don't let me commence!"[4] I should heed that admonition. However, I must acknowledge that I completely agree with the following paragraph in the plaintiff's initial brief:
"The issue in this case is another one of those `only in Alabama' conundrums. In other states, the compensatory damages for medical expenses are recoverable in a wrongful death action. In Alabama, the damages are purely punitive. In almost every other state, a tort claim not filed during the victim's lifetime survives to the estate, so the personal representative can sue for the medical expenses, even if suit is filed after death. But, in Alabama, unfiled tort claims do not survive to the victim's estate. Ala. Code § 6-5-462. Thus, only in Alabama does it matter if Deborah Bassie `died' in January or in April of 2000. In other states, the date of `death' would not matter because the personal representative could bring an action that would include a claim for compensatory damages and medical expenses."
In my 16-page dissent in Tatum v. Schering, 523 So.2d 1042, 1047-63 (Ala. 1988), I expressed my concern about what I thought was the judicial mistake in interpreting the Alabama wrongful-death statute. However, I am now convinced that no matter what the Legislature's original intent was in regard to the damages recoverable in Alabama in wrongful-death actions as expressed in the plain meaning of the statute, the Legislature now intends for those damages to be punitive only. The judiciary does not have the constitutional right to misconstrue a legislative enactment; however, the Legislature does have the power to adopt a judicial misconstruction as the law. It has done so! So let it be written, so let it be done.
NOTES
[1] Section 22-31-1 was amended effective July 1,2000. It now reads:

"An individual who, in the opinion of a medical doctor licensed in Alabama, has sustained either (1) irreversible cessation of circulatory and respiratory functions, or (2) irreversible cessation of all functions of the entire brain, including the brain stem, is dead. A determination of death must be made in accordance with accepted medical standards."
[2] This section, like § 22-31-1, read differently before it was amended effective July 1, 2000, although the distinction is unimportant for purposes of this case. Former § 22-31-2 provided that a physician could use "other procedures based on usual and customary standards of medical practice for determining death as the exclusive basis for pronouncing a person dead."
[3] We note that Bassie has not argued that the language of the statute is ambiguous. Were the statutory language ambiguous, we might "`consider conditions which might arise under the provisions of the statute and examine results that will flow from giving the language in question one particular meaning....'" Ex parte Berryhill, 801 So.2d 7, 10 (Ala.2001), quoting John Deere Co. v. Gamble, 523 So.2d 95, 100 (Ala.1988).
[4] Truman Capote, Music for Chameleons, 186 (Random House 1980).