The plaintiff, Lenvil Dale Messer, as administrator of the estate of Frank R. Messer ("the administrator"), appeals a summary judgment in favor of the defendant, Bobby Ray Turner. We affirm in part, reverse in part, and remand.
On January 25, 2003, a truck driven by Turner struck and injured an 88-year-old pedestrian named Frank R. Messer ("Messer") on County Road 153 in Lauderdale County. On March 3, 2003, while he was in the hospital being treated for his injuries, Messer sued Turner. Alleging a claim of negligence, Messer sought to recover for the injuries he sustained when he was struck by Turner's truck. Messer demanded a jury trial. However, on *Page 106 
March 8, 2003, Messer died as a proximate result of the injuries he sustained in the accident.
After Messer's death, the administrator amended Messer's complaint. The amended complaint substituted the administrator for Messer as the plaintiff in the lawsuit, realleged a personal-injury claim premised upon negligence, alleged a personal-injury claim premised upon wantonness, and alleged wrongful-death claims premised upon negligence and wantonness. The amended complaint also renewed Messer's demand for a jury trial. Answering the amended complaint, Turner denied that he was guilty of negligence or wantonness. In addition, he asserted the affirmative defenses of contributory negligence and assumption of the risk.[1]
On October 24, 2003, Turner moved for a summary judgment on two grounds. First, he argued that the evidence did not establish that he had breached his duty of care. Second, Turner argued that the evidence established that Messer was guilty of contributory negligence as a matter of law. Turner supported his summary-judgment motion with, among other things, his affidavit.
In pertinent part, Turner's affidavit stated:
 "On January 25, 2003, I was driving my 1992 Chevrolet truck south on County Road 153 in Lauderdale County, Alabama[,] going to purchase goat feed in Grassy, Alabama. I was driving at a speed of approximately 25 mph, although the posted speed limit on County Road 153 was 45 mph. It was a sunny day and there was nothing to obstruct my vision. County Road 153 is a two lane road with no shoulder and no dividing line. I had driven on the road many times before.
 "I came upon a man who was standing off the right side of the road at a mailbox. The man, who I have since learned was Frank Messer, did not appear confused or incapacitated, but appeared to be getting his mail.
 "The mailbox was located several feet south of a dirt and gravel driveway that led to a trailer. I have since learned that Mr. Messer lived in that . . . trailer. . . . There was an area of grass, gravel, and dirt between the mailbox and the driveway that a person could walk [on] from the mailbox to the driveway without stepping onto the road. As my vehicle approached the area of the mailbox, Mr. Messer turned from the mailbox to his left[,] taking a step in the road but turned to face the driveway and my truck. I immediately began to move my truck to the left to give Mr. Messer plenty of room to walk along the road's edge, and I made a quick glance in my side mirror to make sure no vehicle was attempting to pass me. Instead of walking along the road's edge[,] Mr. Messer took several more steps toward the center of the road into the path of my truck. I was so close to Mr. Messer when he walked toward the center of the road that all I could do was apply my brakes and swerve my truck to the left trying to avoid Mr. Messer. Unfortunately, the front right fender of my truck struck Messer, knocking him backwards and towards the edge of the road where he landed. When my truck hit Mr. Messer, he was four to five feet in the road. *Page 107 
 "I reacted as quickly as I could when Mr. Messer walked into the path of my truck. He was very close to my truck when he walked toward the center of the road and I did not have time to do anything but apply my brakes and swerve my truck to the left. I was driving as a reasonable person immediately prior to the accident and reacted as a reasonable person when Mr. Messer walked into the path of my truck."
(Emphasis added.)
Subsequent to Turner's moving for a summary judgment, the administrator took Turner's deposition and submitted the deposition transcript in opposition to Turner's summary-judgment motion. The administrator also submitted an affidavit by the state trooper who investigated the accident.
In pertinent part, Turner testified in his deposition:
"Q. Where was Mr. Messer when you first saw him?
"A. At his mailbox, facing his mailbox.
". . . .
 "Q. And apparently getting his mail out of the mailbox?
"A. Yes.
 "Q. And what did he do as he attempted to leave the area of the mailbox?
 "A. For an unknown reason[,] he turned to the left and started to step on the pavement, and I was —
". . . .
 "Q. . . . And he turned to his left and then where did he go, as he turned to his left?
"A. Stepped up on the pavement.
". . . .
"Q. Did he continue turning to his left?
 "A. Yes, he continued turning to his left, but at an angle.
 "Q. . . . At an angle toward your vehicle or away from your vehicle?
"A. Yes, towards the center of the road.
 "Q. Towards the center of the road and toward your vehicle?
"A. Yeah.
 "Q. When he was moving in that direction, was he going in a straight line?
"A. No, he was not.
"Q. Was he continuing to veer to the left?
"A. At an angle.
 "Q. Was he continuing to make a left turn, as he was making that angle?
"A. No, he was looking down at his mail.
 "Q. . . . When you went out there with your attorney, just to look at the scene —
"A. Yes.
 "Q. — did you try to make a determination about how far onto the roadway Mr. Messer was at the time of the impact?
 "A. No, I didn't, but I would say he was about two or three foot — two and a half foot up on the pavement — or three.
 "Q. And you say he was approximately two to three feet from the edge of the pavement, on the mailbox side?
"A. Yes.
 "Q. And at that time was he facing the opposite side of the roadway or your truck or his side of the roadway; the mailbox side of the roadway?
"A. He was really facing — no, he was looking down.
"Q. Looking down?
"A. He had his mail.
 "Q. Okay, let's assume that he looked straight up. Would his eyes be pointing toward the opposite side of the roadway, your truck or back toward his mailbox? *Page 108 
 "A. He'd be looking towards my truck, if he'd looked up."
(Emphasis added.)
In pertinent part, the state trooper who investigated the accident testified:
 "Based on my conversation with Mr. Turner, he did not tell me that he honked or alerted Mr. Messer as to his vehicle approaching the scene.
 "While at the scene, I examined the area of the mailboxes, and the ground immediately in front of the mailbox was wet and the wet condition extended back to the driveway. This condition made it difficult to walk off the roadway. . . ."
(Emphasis added.)
The administrator argued that the evidence established the following jury questions for a jury's consideration: (1) whether Turner negligently or wantonly failed to avoid hitting Messer; and (2) whether Turner negligently or wantonly failed to honk his horn or otherwise alert Messer that Turner's truck was approaching. The administrator further argued that Turner had not established that Messer was guilty of contributory negligence as a matter of law. Finally, the administrator argued that, even if Turner had established that Messer was guilty of contributory negligence as a matter of law, the evidence established a jury question regarding whether Turner was guilty of subsequent negligence in failing to avoid Messer after he saw that Messer was in a perilous position.
Following a hearing, the trial court, without stating its rationale, entered a summary judgment in favor of Turner on July 13, 2004. The administrator timely appealed to the supreme court. Subsequently, the supreme court, acting pursuant to § 12-2-7(6), Ala. Code 1975, transferred the appeal to this court.
On appeal, the administrator does not argue his claims premised upon wantonness. Accordingly, we treat those claims as having been abandoned by the administrator, and we affirm the summary judgment with respect to those claims. See Tucker v.Cullman-Jefferson Counties Gas District, 864 So.2d 317, 319
(Ala. 2003) ("`When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshellv. Keith, 418 So.2d 89 (Ala. 1982).' Asam v. Devereaux,686 So.2d 1222, 1224 (Ala.Civ.App. 1996). `An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued
in brief. Ex parte Riley, 464 So.2d 92 (Ala. 1985).' Braxtonv. Stewart, 539 So.2d 284, 286 (Ala.Civ.App. 1988). Accordingly, we treat the fraud claim and the claim alleging `other wrongful conduct' as having been abandoned by [the appellant] and we affirm the summary judgments as to those claims.") (emphasis original).
With regard to his claims premised upon negligence, the administrator argues that the trial court erred in entering a summary judgment in favor of Turner because, he says, even if the evidence established that Messer was guilty of contributory negligence as a matter of law, the administrator nonetheless submitted substantial evidence establishing a genuine issue of material fact regarding whether Turner was guilty of subsequent negligence in failing to honk his horn after he observed Messer in the road. We agree.
 "`We review a summary judgment de novo.' Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala. 2002) (citation omitted). `Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."' Ex parte Rizk, *Page 109 791 So.2d 911, 912 (Ala. 2000) (citations omitted).
 "`In determining whether the nonmovant has created a genuine issue of material fact, we apply the "substantial-evidence rule" — evidence, to create a genuine issue of material fact, must be "substantial." § 12-21-12(a), Ala. Code 1975. "Substantial evidence" is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'
 "Callens v. Jefferson County Nursing Home, 769 So.2d 273, 278-79 (Ala. 2000) (footnote omitted). In deciding a motion for a summary judgment, or in reviewing a summary judgment, the court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of the nonmoving party. Bruce v. Cole, 854 So.2d 47 (Ala. 2003), and Pitney Bowes, Inc. v. Berney Office Solutions, 823 So.2d 659 (Ala. 2001). See Ex parte Helms, 873 So.2d 1139 (Ala. 2003), and Willis v. Parker, 814 So.2d 857 (Ala. 2001)."
Hollis v. City of Brighton, 885 So.2d 135, 140 (Ala. 2004).
 "`[A] victim's initial contributory negligence in placing himself in a position of peril is no defense to [a claim of] subsequent negligence on [the] part of the defendant.' Dees v. Gilley, 339 So.2d 1000, 1002 (Ala. 197[6]). The elements of proof of subsequent negligence are: (1) that the plaintiff was in a perilous position; (2) that the defendant had knowledge of that position; (3) that, armed with such knowledge, the defendant failed to use reasonable and ordinary care in avoiding the accident; (4) that the use of reasonable and ordinary care would have avoided the accident; and (5) that plaintiff was injured as a result. Treadway v. Brantley, 437 So.2d 93 (Ala. 1983)."
Zaharavich v. Clingerman, 529 So.2d 978, 979 (Ala. 1988).
Section 32-5A-213, Ala. Code 1975, provides, in pertinent part:
 "[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any obviously confused, incapacitated or intoxicated person."
(Emphasis added.)
In the case now before us, the undisputed evidence established that Turner saw Messer, an 88-year-old man, looking down at his mail and walking into the road as Turner approached in his truck; that Messer never looked up before Turner's truck struck him; and that Messer continued walking in the road until Turner's truck struck him. Turner introduced no evidence establishing that he honked his horn after he saw Messer walking into the road. The investigating state trooper's affidavit tended to prove that Turner did not honk his horn after he saw Messer. Accordingly, even if Messer were guilty of contributory negligence as a matter of law, the evidence before the trial court nonetheless established a genuine issue of material fact regarding whether Turner was guilty of subsequent negligence in failing to honk his horn after he saw Messer walking into the road. Consequently, we must reverse the summary judgment in favor of Turner with respect to the administrator's claims premised upon negligence and remand the case to the trial court for *Page 110 
further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All the judges concur.
[1] Turner did not assert that § 6-5-462, Ala. Code 1975, barred the personal-injury claim premised upon wantonness because it was not filed before Messer's death. See Bassie v. Obstetrics Gynecology Assoc., 828 So.2d 280, 282 (Ala. 2002) ("In Alabama, a deceased's unfiled tort claims do not survive the death of the putative plaintiff.").