[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10873

_____

CHERELLE FLETCHER,
Individually and as Personal Representative
of the Estate of Dana Sherrod Fletcher, deceased
and V.F., a minor, by and through her mother
and next friend, Cherelle Fletcher,

Plaintiff-Appellant,

V.F.
a minor, by and through her mother and next
friend, Cherelle Fletcher,

Plaintiff,

*versus*

CITY OF MADISON,
a municipal corporation,
PAUL FINLEY,

2                        Opinion of the Court                23-10873

DAVID K. JERNIGAN,
STEVE SMITH,
MAURA WROBLEWSKI,
in their individual capacities, et al.,

                                        Defendants-Appellees,

CONNIE SPEARS, et al.,

                                        Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:21-cv-01432-LCB

_____

Before BRASHER, HULL, and WILSON, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about whether a district court abused its discretion when it dismissed Cherelle Fletcher's second amended complaint with prejudice on shotgun-pleading grounds. Because several parties share the surname Fletcher, we will refer to them by their first names. The complaint was filed on behalf of three plaintiffs: Cherelle, Cherelle's daughter V.F., and the personal

representative of the estate of Cherelle's deceased husband Dana. Shayla Fletcher—a lawyer and Dana's sister—represented all three parties.

This appeal presents two primary issues. First, we must resolve a jurisdictional issue that arose when Cherelle moved *pro se* to dismiss her appeal and Shayla moved to substitute herself in Cherelle's place as the administrator of Dana's estate so the litigation may continue. If we have jurisdiction, we must resolve whether the second amended complaint was a shotgun pleading. We conclude that we may substitute Shayla in the place of Cherelle as representative of the estate, that we have jurisdiction to hear this appeal, and that the district court did not abuse its discretion when it dismissed the second amended complaint as a shotgun pleading.

As an ancillary matter, we take up the issue of whether the district court correctly dismissed the state-law wrongful death claim with prejudice on the grounds that the statute of limitations precluded a refiling in state court. Because that claim is subject to tolling under 28 U.S.C. § 1367(d), we reverse and remand with instructions to the district court to dismiss that claim without prejudice.

## I.

Although this appeal turns on procedural issues, the underlying litigation arose from a police shooting. According to the second amended complaint, on October 27, 2019, Dana Fletcher was sitting in a car in Madison, Alabama, with his eight-year-old daughter, V.F. Cherelle—Dana's wife—got in the car, and a Madison

Police Department vehicle pulled up beside the car. A police officer approached Dana's door, but Dana ignored the officer. The encounter escalated. More officers arrived, police pointed their guns at the Fletchers, and police used a K-9 on Dana. Police beat Dana, used a taser on him, and shot him to death.

*A.*

Almost two years later, on October 26, 2021, Cherelle filed the initial complaint through her counsel Shayla. The initial complaint spanned 64 pages and was 357 paragraphs long. It included twenty-eight causes of action against the City of Madison, thirteen other named defendants, and five fictitious defendants (collectively, "Madison"). Cherelle sued Madison individually, as the personal representative of Dana's estate, and on behalf of V.F. Notably, Shayla Fletcher—Dana's sister and a lawyer—served as counsel for all plaintiffs.

Madison moved to dismiss the complaint on multiple grounds, one being that the complaint was an impermissible shotgun pleading. Madison contended that the original complaint "commit[ted] all four of the pleading 'sins' proscribed by" this Court.

First, the original complaint "adopt[ed] and incorporate[d] by reference all preceding paragraphs and prior counts," which is the most common type of shotgun pleading.

Second, the complaint was "replete with conclusory, vague, and immaterial facts not obviously connected to any particular

cause of action." "For instance, the complaint describe[d] [Cherelle's] efforts to obtain legal representation and her legislative advocacy without ever connecting these allegations to any of the asserted causes of action." The complaint also included allegations "regarding a purported relationship between [the Madison Police Department] and other law enforcement agencies, including allegations regarding uses of force by officers of agencies other than [the Madison Police Department]" without connecting those allegations to the underlying claims in this suit.

Third, Madison argued that the original complaint did not separate each cause of action or claim for relief into a separate count. "For example, nearly every count combine[d] an underlying claim for violation of federal or state law by an individual defendant with claims against" the City of Madison and local politicians. And "many causes of action [we]re asserted by more than one of the three plaintiffs based on different facts, resulting in a confusing mixture of claims." Madison contended that some counts brought claims under both federal and state law.

Fourth, Madison contended that the original complaint included multiple claims brought against multiple defendants "without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." For instance, Madison argued that "the complaint often refers to "Plaintiff" singularly and 'Plaintiffs' collectively and interchangeably without any explanation as to which of the three plaintiffs, or some combination thereof, are asserting the claims."

*B.*

The district court never ruled on the motions to dismiss because they quickly became moot when Cherelle filed her first amended complaint. The first amended complaint was 67 pages and 375 paragraphs long, and it included 34 causes of action.

Madison moved to dismiss the first amended complaint on multiple grounds, including that the complaint was a shotgun pleading. Madison again contended that the first amended complaint was a shotgun pleading of all four forbidden varieties. Madison's arguments generally mirrored those that it offered against the initial complaint. Cherelle responded that the first amended complaint was not a shotgun pleading because it provided sufficient notice under Rules 8 and 10 of the Federal Rules of Civil Procedure. Cherelle requested leave to amend the first amended complaint as alternative relief.

The district court concluded that the amended complaint was a shotgun pleading that bore "the hallmarks of a 'shotgun pleading' as exemplified in *at least* the third *Weiland* factor." The district court ordered Cherelle to file a second amended complaint and encouraged Cherelle to cut her "unnecessarily long" 67-page complaint down to 50 pages, if possible. The district court observed that because Cherelle had already amended her complaint, it would allow Cherelle "to amend once more, but only once more." "Any further allowances [would not] be forthcoming." The district court also ordered Cherelle's counsel to meet and confer with Madison's counsel "in the hopes that, after a free and frank discussion

of the [first] Amended Complaint's issues, the Second Amended Complaint will not merit dismissal as a 'shotgun pleading.'" The district court encouraged Cherelle's counsel "to associate and/or consult counsel with attorneys experienced in matters like the case at Bar." The district court warned Cherelle that although it "disfavor[ed] dismissing cases based upon the failure to adequately and properly plead a case, it w[ould] have no choice but to do so if the Second Amended Complaint" was a shotgun pleading.

## C.

Cherelle filed her second amended complaint. The second amended complaint was 53 pages, 252 paragraphs, and asserted 24 causes of action. Madison again moved to dismiss the second amended complaint on multiple grounds, including that it was an impermissible shotgun pleading.

Madison specifically argued that the second amended complaint was a shotgun pleading of the third *Weiland* category because it did not separate each cause of action into a separate count. For example, Madison contended that in count eighteen of the second amended complaint, "all three Plaintiffs assert a single count for municipal liability pursuant to § 1983 based on the singular purported custom of the City to allow officers 'to use force in response to perceived noncompliance' and the alleged failure to train on 'the use of force.'" But, Madison continued, the count "alleges vastly different uses of force as to each plaintiff." It alleged that "MPD officers allegedly used a K-9, physical strikes, and a Taser on [Dana]," but "[Cherelle] and [V.F.] were allegedly pulled from their

vehicle." According to Madison, count eighteen "appear[ed] to be an omnibus count asserting" six claims against the City of Madison: "(1) a wrongful death claim . . . by Cherelle . . . as personal representative of [the] estate," "(2) an excessive force claim by Cherelle . . . , (3) an excessive force claim by V.F., (4) an unlawful seizure claim by Cherelle . . . , (5) an unlawful seizure claim by V.F., and, possibly, (6) an impermissible seizure claim brought by [the estate's personal representative] despite the abatement of such a claim under Alabama law."

Cherelle moved for leave to amend the complaint and file a third amended complaint, which she attached to her motion. The motion to amend stated that its purpose was not to correct a shotgun-pleading issue. The motion to amend instead took aim at the district court's previous order and faulted the district court for "provid[ing] no meaningful . . . analysis" as to why the first amended complaint was a shotgun pleading. Cherelle also responded to Madison's motion to dismiss, and she contended that her second amended complaint was not a shotgun pleading. Madison opposed Cherelle's motion to amend the complaint on the grounds that it was futile because the third amended complaint "is another shotgun pleading."

Before the district court ruled on the motion to dismiss, Cherelle personally filed a handwritten letter that asked the district court "to dismiss the cases [i]ndividually and as representative of the Estate" and to "also dismiss the claims of my minor daughter V.F." Cherelle explained that her religious beliefs compelled her to

forgive others, and thus she wanted to "dismiss these cases." Cherelle said that she had expressed her desire to dismiss her case to her counsel, and that her counsel told her that "she would file a motion to dismiss with prejudice." Cherelle filed the handwritten letter because her counsel had not yet filed a formal motion. The day before Cherelle filed her handwritten letter, Cherelle's counsel filed a motion for a continuance stating that the "[r]ecent instructions of Cherelle . . . have created a potential conflict of interest that prevents the undersigned from fulfilling her fiduciary obligations." But Cherelle's counsel did not explain what that conflict of interest was in her filing.

On the same day that Cherelle filed her handwritten motion, the district court issued the order that generated this appeal. The order granted Madison's motion to dismiss. The district court ruled that Cherelle's second amended complaint "violate[d] Rules 8(a)(2) and 10(b)" of the Federal Rules of Civil Procedure because it was a shotgun pleading.

The court reached that conclusion on three bases.

First, the court explained that the second amended complaint was a second-category shotgun pleading because it "is rife with conclusory allegations that are mixed haphazardly with facts which, at a minimum, makes it difficult for the Court to determine what facts support what claims for relief and whether Plaintiffs have stated claims upon which relief can be granted." As an example of the complaint's defects, the district court pointed to paragraph 44 of the second amended complaint, which alleged "that the

[Madison Police Department], the Madison County Sheriff's Department ("MCSO"), and the Huntsville Police Department ("HPD") have a 'reputation for working together, for harassing people, and for being overly aggressive' without citing any factual bases to support such conclusions." The district court stated that Cherelle "incorporate[d] Paragraph 44 in Counts 4, 5, 6, 9, 19, 20, and 24 while failing to properly connect the statements in the Paragraph to each claim."

The district court also found that paragraph 48 of the second amended complaint contained conclusory language that was unconnected to any claim for relief. Paragraph 48 alleged that "John Doe 1 radioed for backup, communicating the circumstances and summoning John Doe 2-5 to the scene to increase the intimidation factor caused by a larger police presence and to apply even more violent and depraved means to coerce the Fletchers' compliance and cooperation." Cherelle incorporated that paragraph "in Counts 7, 8, 10, 13, 14, 15, 16, 17, 19, 20, 21, 22, and 24, while, again, failing to properly connect the Paragraph's allegations to each claim."

And the district court faulted Cherelle for "devot[ing] a chunk of the[] Second Amended Complaint to what appears to be commentary on the qualified immunity doctrine and altercations between citizens and law enforcement in the general area surrounding Madison, Alabama." According to the district court, the second amended complaint coined the Madison Police Department, Madison County Sheriff's Office, and Huntsville Police Department as "Sister-Agencies." The district court observed that

"Plaintiffs do not allege that the MPD, HPD, and MCSO operate *interdependently* or *share* leadership." Thus, "it is vague and potentially deceptive for Plaintiffs to state that the three entities 'consider themselves one body in many respects.'" The second amended complaint "describe[d] alleged uses of excessive force by [Huntsville Police Department] officers while failing to link their significance to alleged constitutional violations by [Madison Police Department] officers." But Cherelle "incorporate[d] these paragraphs into the[] claims against the City of Madison." The district court ultimately concluded that it could not "determine which facts support [the] claims that . . . Madison is liable."

Second, the district court held that Cherelle's second amended complaint was a third-category shotgun pleading because "[m]any of [the] counts present[ed] more than one discrete claim for relief." The district court first pointed to count five, in which the personal representative of the estate alleged that Officer 1 violated Dana's "First *and* Fourth Amendment rights." Similarly, in count eleven, the district court observed that the "Estate brings a § 1983 claim of excessive force against Officers 1, 3, and 4." In that count, "Plaintiffs describe how Officer 1 tased [Dana], how Officer 3 punched [Dana] and released the K-9 Officer on [Dana], and how Officer 4 used lethal force against [Dana]." But the district court ruled that "[t]hose are three, separate theories upon which a plaintiff may recover for a Fourth Amendment violation—not one." And the district court found that in count eighteen, all plaintiffs asserted a section 1983 municipal liability claim against Madison. The district court reasoned that under binding Eleventh Circuit

precedent, that claim requires a plaintiff to establish, among other things, a constitutional rights violation. The problem, the district court explained, was that none of the plaintiffs specified what constitutional violation the claim or claims in count eighteen was based on. Because "[o]ver a dozen of Plaintiffs' counts allege that someone's constitutional rights were violated[,]" the district court concluded that "Plaintiffs . . . appear to be bringing multiple theories of § 1983 liability against . . . Madison as a sort of omnibus liability claim."

Third, and finally, the district court concluded that the second amended complaint was a fourth-category shotgun pleading because it "assert[ed] multiple claims against multiple Defendants without adequately specifying which Defendant is responsible for which act." The district court pointed to count nineteen, in which "all Plaintiffs bring an outrage/intentional infliction of emotional distress claim under Alabama tort law against Defendant Officers 1 thru 5." That count alleged "that the Officers intended to 'make Plaintiffs have great fear for their safety and life [sic].'" The plaintiffs "then list various actions: 'pointing firearms at [Dana's and Cherelle's] heads; physically seizing and dragging [Cherelle] and V.F. out of the vehicle . . . ; releasing an attack dog on [Fletcher] . . . ; Tasing [Dana]; punching and beating [Dana] and ultimately shooting [Dana] unnecessarily." The district court held that the second amended complaint was a shotgun pleading because it failed to "differentiate which Defendant Officer is responsible for which act," and instead "appear[ed] to be imputing the individual Officers' actions on the group."

The district court's order also denied Cherelle's motion for leave to file a third amended complaint because it would have been futile. In its dismissal order, the court observed that Cherelle had twice amended her complaint, that it had warned Cherelle that her previous complaint was a shotgun pleading, that it had ordered Shayla to meet and confer with Madison's counsel before filing the second amended complaint to avoid this problem, and that it had warned Cherelle that she "would not have another chance to amend." The court concluded that granting leave to amend would be futile because Cherelle's proposed third amended complaint "fail[ed] to correct *any* of the shotgun pleading deficiencies discussed."

The district court dismissed all plaintiffs' federal claims and the state claims that it determined were then barred by the applicable statutes of limitation with prejudice. It dismissed the remaining claims without prejudice.

The district court also "note[d] that just hours prior to the entry of this Order, Cherelle . . . filed a letter with the Court, which appears to be a Motion to Dismiss this matter." But the court did not consider the motion "because the document was not filed by [Cherelle's] attorney of record, and because it [was] unclear whether it was filed with her attorney's knowledge." The district court issued a final judgment in accord with its opinion and order.

*D.*

Cherelle's counsel filed a timely notice of appeal as the "attorney of record." Later, Cherelle filed a handwritten letter on our

docket. Cherelle asked that we "dismiss this appeal entirely" and stated that "[t]his appeal was filed without [her] consent." Cherelle alleged that her counsel "misled [her] into believing she would act in harmony with [her] wishes." Along with receipts of their text and email communications with one another, Cherelle also attached a copy of her counsel's letter terminating their attorney–client relationship, which was effective the same day the district court issued its opinion and final judgment. Cherelle also stated that she was "not trying to stop [her counsel] from pursuing" relief "on her own behalf or on behalf of the estate" as long as she was not involved. Cherelle remained frustrated that she was being forced to continue this lawsuit that contravened her religious beliefs. We issued a "no action/deficiency notice" because Cherelle was "represented by counsel and cannot file pro-se."

About two weeks later, Cherelle's counsel filed a motion for substitution of personal representative. Specifically, Cherelle's counsel asked us to substitute her in place of Cherelle as the personal representative of the estate under Rule 43(b) of the Federal Rules of Appellate Procedure. Cherelle's counsel argued that "this appeal was not filed on behalf of Cherelle," but was filed on her own behalf because she is the real party at interest "as a duly-appointed personal representative of the Estate." Cherelle's counsel also informed us that the Probate Court of Madison County appointed her and Cherelle as co-personal representatives of the estate before Cherelle filed suit. Cherelle's counsel asserted that, at that time, they agreed that "Cherelle . . . would serve as the personal representative of the Estate for the purpose of prosecuting

23-10873               Opinion of the Court                    15

claims on the Estate's behalf" and "Shayla agreed to serve as counsel." Months later, Shayla filed a motion for us to take judicial notice of an order from the Probate Court of Madison County that terminated Cherelle as co-personal representative of the estate and confirmed that Shayla was the sole personal representative of the estate. Madison opposed the motion on the same grounds it advanced in its motion to dismiss.

## II.

We review jurisdictional questions *de novo*. *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1289 (11th Cir. 2004). We review legal questions *de novo* as well. *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000). "We review a dismissal on Rule 8 shotgun pleading grounds for an abuse of discretion." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).

## III.

This appeal presents two issues. First, we must decide whether the notice of appeal was effective for jurisdictional purposes. Second, if we have jurisdiction, we must decide whether the district court acted within its discretion when it dismissed the second amended complaint as a shotgun pleading.

### A.

As always, we begin by examining whether we have jurisdiction to hear this appeal, for without it, we are powerless to act. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir.

1999). Madison argues that we should dismiss this appeal for lack of jurisdiction. According to Madison, this appeal was "void *ab initio*" because "the sole named plaintiff, Cherelle" repeatedly "expressed her desire . . . to cease prosecuting this action" individually, and on behalf of V.F. and the estate, "and did not authorize the filing of this appeal."

Before addressing Madison's argument, we should make clear what is not in dispute on this point. To start, "[w]e have appellate jurisdiction over 'all final decisions of the district courts of the United States.'" *Gov't Emps. Ins. Co. v. Glassco, Inc.*, 58 F.4th 1338, 1340 (11th Cir. 2023) (quoting 28 U.S.C. § 1291). And no one disputes that Cherelle's counsel filed a timely notice of appeal, which is a "jurisdictional requirement" in civil cases. *Bowles v. Russell*, 551 U.S. 205, 213 (2007). Madison's contention is that Cherelle's *pro se* filings urging the district court and this Court to dismiss her case deprive us of jurisdiction to hear this appeal.

That argument misses the mark because our rules prohibit us from considering *pro se* filings from a party represented by counsel. 11th. Cir. R. 25-1; *see also In re Henry*, 757 F.3d 1151, 1156 n.7 (11th Cir. 2014). Shayla served as counsel for Cherelle, V.F. and the estate. Because Shayla represented all three plaintiffs, we may not consider Cherelle's *pro se* filings. 11th Cir. R. 25-1. To be sure, Cherelle's filings suggest that Shayla may have acted against the wishes of her client. But that rift does not deprive us of jurisdiction. Shayla never filed a notice of withdrawal, nor was she disqualified, so her notice of appeal was effective for jurisdictional purposes.

Madison also argues that Shayla lacks Article III standing to bring this appeal, because "Article III demands that an 'actual controversy' persist throughout all stages of litigation." Madison says that any case or controversy concluded when Cherelle asked the court to dismiss the case, because "the decision whether to pursue a civil appeal belongs exclusively to the client." *J.J. Rissell, Allentown, PA Tr. v. Marchelos*, 976 F.3d 1233, 1235 (11th Cir. 2020).

This argument falls short as well. There is no question that all parties had standing to appeal the district court's final judgment. "To establish appellate standing, a litigant must prove that it has (1) 'suffered a concrete and particularized injury' (2) 'that is fairly traceable to the challenged conduct,' (3) and that 'is likely to be redressed by a favorable judicial decision.'" *Finn v. Cobb Cnty. Bd. of Elections & Registration*, 111 F.4th 1312, 1316 (11th Cir. 2024) (quoting *Kimberly Regenesis, LLC v. Lee County*, 64 F.4th 1253, 1259 (11th Cir. 2023)). Here, all three plaintiffs undisputedly alleged injuries traceable to challenged conduct and redressable by favorable judicial decision, so they easily satisfy that inquiry.

Substitution poses no problem for us either. Shayla argues that we should substitute her in place of Cherelle as personal representative of the estate under Rule 43 of the Federal Rules of Appellate Procedure. Madison contests this assertion—but does not dispute that the probate court made Shayla the sole representative of the estate after she filed the notice of appeal. Because it is undisputed that the probate court made Shayla the sole personal representative of the estate, and this fact comes from a source "whose

accuracy cannot reasonably be questioned," we can take judicial notice of this document issued by an Alabama state court. Fed. R. Evid. 201; *see also U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015); *cf. United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

Rule 43 governs the "[s]ubstitution of parties." Fed. R. App. P. 43. Rule 43(b) provides that "[i]f a party needs to be substituted for any reason other than death, the procedure prescribed in Rule 43(a) applies." Rule 43(a)(1) governs substitution when a party dies after a notice of appeal is filed or during the pendency of appellate litigation. That rule provides, in part, that "the decedent's personal representative may be substituted as a party on motion filed with the circuit clerk by the representative or by any party." Fed. R. App. P. 43(a)(1).

Rule 43 is "is based on Fed. R. Civ. P. 25, which has been interpreted to apply only when the case originally had the correct parties." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1131 (11th Cir. 2019) (quoting *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 672 (11th Cir. 1991)). When filed, this case had the correct parties. Cherelle was co-personal representative of the estate, and she brought claims against Madison on behalf of herself, her minor daughter, and the estate. Those were proper parties to the dispute.

Madison opposes substitution of Shayla in place of Cherelle as personal representative of the estate based on our observation in *Silberman* that "[o]ther courts have similarly held that substitution under Rule 43(b) is appropriate only where some intervening event

occurs after the district court's judgment that affects a party's ability to litigate." *Silberman*, 927 F.3d at 1131 n.3. In other words, those courts held that "substitution under Rule 43(b) is permissible only when 'a party to the suit is unable to continue to litigate and not when an original party has voluntarily chosen to stop litigating.'" *Id.* (quotation marks omitted) (quoting *AngioDynamics, Inc. v. Biolitec, Inc.*, 775 F.3d 550, 554 (2d Cir. 2015)).

There is no daylight between *Silberman*'s observation and our decision here. If we give effect to the probate court's order, Cherelle can no longer represent the estate as personal representative. Under Alabama law, only a duly appointed personal representative may litigate on behalf of an estate. *Douglass v. Jones*, 628 So. 2d 940, 941 (Ala. Civ. App. 1993); *see also In re Eldridge*, 348 B.R. 834, 844 (Bankr. N.D. Ala. 2006) (collecting cases). So even if Cherelle were willing to continue the litigation, she could no longer continue on behalf of the estate because of the intervening order from the Alabama probate court. Shayla has sought substitution in place of Cherelle, and as the sole personal representative of the estate, she is "the proper party" to litigate on its behalf. Fed. R. Civ. P. 25(a)(1). Accordingly, we will grant Shayla's motion for substitution.

*B.*

Before we turn to the substance of the shotgun pleading issue, we must decide which claims are still pending. We think that any claims on behalf of Cherelle or V.F. have been forfeited. In her initial brief, Shayla stated that "Cherelle Fletcher and V.F., a minor,

no longer are parties to the lawsuit." And at oral argument, Shayla confirmed that she is proceeding only as a personal representative on behalf of the estate. So only the personal representative's claims remain at issue.

We have identified four types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The first type—and most common one—occurs when "a complaint contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321–22. The second type is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* The third type is a complaint that does "not separat[e] into a different count each cause of action or claim for relief. *Id.* at 1322–23. And the fourth type is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* And "[b]esides violating the rules, shotgun pleadings also 'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the

public's respect for the courts.'" *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Vibe Micro*, 878 F.3d at 1295). "[W]e have condemned shotgun pleadings time and again, and this is why we have repeatedly held that a District Court retains authority to dismiss a shotgun pleading on that basis alone." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018).

Shayla argues that the district court abused its discretion when it dismissed the second amended complaint as a shotgun pleading. We disagree. For the sake of brevity, we will focus on the personal representative's claims against the only named defendant, the City of Madison, which are counts eighteen and twenty-three of the second amended complaint. *See Barmapov*, 986 F.3d at 1325–27 (affirming district court's dismissal of entire shotgun complaint without assessing whether any particular claim satisfies Rules 8 and 10); *Jackson*, 898 F.3d at 1356–59 (same); *Vibe Micro*, 878 F.3d at 1294–1296 (11th Cir. 2018) (same).

Focusing on counts eighteen and twenty-three of the second amended complaint against Madison, we see two main problems.

First, the second-amended complaint is a second-category shotgun pleading because its counts include extraneous allegations that are unconnected to the dispute at issue. For example, the second amended complaint spends more than a page recounting alleged wrongdoings that Huntsville police officers and Madison County Sheriff's deputies, who are not defendants, committed against other people who are not plaintiffs to this action. The

second amended complaint incorporates these allegations in counts eighteen and twenty-three.

Second, the second amended complaint is a third-category shotgun pleading because its counts lump the claims of all three plaintiffs together. *See Weiland*, 792 F.3d at 1322–23. For instance, in count eighteen, all plaintiffs assert a section 1983 municipal liability claim against the City of Madison. Although paragraph 211 alleges that Madison is liable for violating all three plaintiffs' rights under the Fourth Amendment, Cherelle, V.F., and Dana (the estate) did not have the same experience. And seventeen of the twenty-four substantive counts in the complaint allege that various John Does committed Fourth Amendment violations—the complaint could be attempting to hold Madison liable for any of them. Count twenty-three commits a similar error. That count brings a claim of state law municipal liability by all three plaintiffs referencing "constitutional violations" committed by various fictitious-party defendants under multiple theories of recovery. Just like count eighteen, it is "virtually impossible" for Madison to have any reasonable certainty as to what exactly this claim alleges. *Weiland*, 792 F.3d at 1325.

Shayla makes four arguments that the district court erred. But none of them are convincing.

First, Shayla contends that the district court erred by dismissing the second amended complaint as a shotgun pleading "without conducting any meaningful analysis of how the isolated paragraphs supported specified counts." In other words, Shayla

argues that the burden should be on the defendants—and the court—to attempt to decipher her jumbled pleading. But that argument goes against our precedent and policy regarding shotgun pleadings. We encourage courts to dismiss shotgun pleadings precisely to avoid the imposition of "unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson*, 898 F.3d at 1356 (quoting *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)). Indeed, waste of resources is not the only consequence of shotgun pleadings, which are often "calculated to confuse the enemy, and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Barmapov*, 986 F.3d at 1324 (cleaned up) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 (11th Cir. 1985) (Tjoflat, J., dissenting)). When faced with a shotgun complaint, a district court should either order repleader, or dismiss the pleading, but it should never use its resources to untangle it. *See Jackson*, 898 F.3d at 1357; *see also Barmapov*, 986 F.3d at 1329 (Tjoflat, J., concurring).

Second, Shayla contends that the district court "exceed[ed] what is required" by Rules 8 and 10 of the Federal Rules of Civil Procedure. She argues that the burden should have been on the defendants to move to dismiss the complaint under Rule 12(b)(6). To begin with, we acknowledge that Madison moved to dismiss *every* complaint that Cherelle filed on shotgun-pleading grounds, so Shayla's argument is a non-starter. But even if it were factually correct, Shayla's argument still misses the mark. "We have explained that in a case in which a party, plaintiff or defendant, files a shotgun

pleading, the district court should strike the pleading and instruct counsel to replead the case—if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)." *Jackson*, 898 F.3d at 1357 (cleaned up) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001) (overruled on other grounds)). Indeed, courts should strike shotgun pleadings "even when the other party does not move to strike the pleading." *Id.* at 1358.

Third, in a footnote critiquing the district court's classification of the complaint as a third-category shotgun pleading, Shayla quotes *Weiland* for the proposition that "[a] complaint is not always required to contain a separate count for each constitutional provision that the same set of facts is claimed to violate." 792 F.3d at 1325 n.18. We made that observation in *Weiland* while explaining that separate counts are unnecessary when pleading constitutional violations that are "all based on the same 'transaction or occurrence.'" *Id.* In *Weiland*, for example, we approved the plaintiff's formulation in which he alleged in one count that two officers' use of excessive force "violated [his] Fourth, Fifth, and Eighth Amendment rights, applicable to the States through the Fourteenth Amendment." *Id.* It was unnecessary for the *Weiland* plaintiff to break up that simple allegation into three counts.

But Shayla reads this portion of *Weiland* too broadly— *Weiland* made it clear that we were "not retreating from this circuit's criticism of shotgun pleadings." *Id.* at 1326. *Weiland* did not grant blanket approval to combine multiple plaintiffs asserting multiple claims as to multiple occurrences against multiple

defendants under multiple theories all into one count. Because the second amended complaint did just that, it is a shotgun pleading.

Fourth, Shayla argues that the district court erred by not giving her another chance to amend her complaint. "In dismissing a shotgun complaint for noncompliance with Rule 8(a), a district court must give the plaintiff 'one chance to remedy such deficiencies.'" *Jackson*, 898 F.3d at 1358 (quoting *Vibe Micro*, 878 F.3d at 1295). And "[i]n the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings." *Vibe Micro*, 878 F.3d at 1295. "[T]he key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them." *Jackson*, 898 F.3d at 1358. For "[i]f that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds." *Id.*

Here, the district court fulfilled its duty. Madison put Shayla on notice that her initial complaint and first amended complaint were shotgun pleadings. Cherelle disagreed, but she requested, and the district court granted, leave to amend after filing her first amended complaint. The district court ruled that the first amended complaint was a shotgun pleading, explained that the first amended complaint bore "the hallmarks of a 'shotgun pleading' as exemplified in *at least* the third *Weiland* factor," and granted Cherelle leave to amend. So the district court put Cherelle on notice that her complaint *at least* "commit[ted] the sin of not separating into a different

count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1313. And the district court invited Cherelle's counsel to confer with opposing counsel "in the hopes that, after a free and frank discussion of the Amended Complaint's issues, the Second Amended Complaint will not merit dismissal as a 'shotgun pleading.'"

The district court's explanation appears even more reasonable in the light of the multiple rounds of briefing in the district court. Madison filed many briefs explaining why the original complaint and the first amended complaint were shotgun pleadings. Those briefs—which ran parallel to the district court's ultimate explanation of why it dismissed the second amended complaint as a shotgun pleading—were "as complete an explanation of the defects in [the] complaint as the [Plaintiffs] could have asked for." *Jackson*, 898 F.3d at 1358. We cannot say that Shayla lacked notice when the district court's order and numerous rounds of briefing all pointed to our shotgun-pleading decisions and identified matching defects in her complaint. And even if the district court's explanation was brief, Shayla made no effort to remedy the third-category shotgun error the district court specifically identified. Notice was not to blame.

Our dissenting colleague suggests that justice requires that we extend relief to Shayla that she never asked for before the district court: leave to amend to correct the shotgun-pleading issue that the district court identified. Indeed, Shayla explicitly told the district court that she had no intention of fixing the shotgun-pleading problem the district court identified. When Shayla moved for

23-10873                Opinion of the Court                27

leave to amend her second amended complaint—after the district court told her that her first amended complaint was a shotgun pleading of "*at least* the third *Weiland* factor"—she expressly stated that "the purpose of the amendment is not to correct a *Weiland*-type deficiency." In other words, Shayla told the district court that she declined to remedy the pleading problem the district court identified because she disagreed with the district court's assessment. Neither justice, nor Rule 15, requires district courts to entertain another shotgun pleading from a litigant that expressly declines to remedy a shotgun-pleading issue the district court has already identified.

Relatedly, the dissent also suggests that although Shayla gave her "best efforts with limited information" the district court is to blame because it identified her first amended complaint as *at least* a third-category shotgun pleading, but it dismissed her second amended complaint as a shotgun pleading of three varieties. That argument does not hold up for two reasons. One, we disagree with the premise of the argument. We cannot say that Shayla gave her best efforts—or any effort at all—to fix the third-category shotgun-pleading issue the district court identified; she affirmatively represented that she made no effort to fix the problem because she disagreed with the district court. And two, Shayla's second amended complaint was still a third-category shotgun pleading. Although the dissent's argument might have merit if the district court identified one type of shotgun-pleading problem but dismissed the complaint on some other ground, it dismissed the complaint because it remained a third-category shotgun pleading, among other errors.

And because we agree with the district court that the second amended complaint was a third-category shotgun pleading, it makes little sense for Shayla to complain about the other problems with her complaint when she failed to fix the one the district court identified for her.

C.

Finally, we take up the issue of whether the district court should have dismissed the wrongful death claim without prejudice. Generally, when a district court dismisses state law claims without an analysis of the merits, it "should do so without prejudice as to refiling in state court." *Vibe Micro*, 878 F.3d at 1296. The district court concluded that the personal representative of the estate could not refile the wrongful death claim because of Alabama's two-year statute of limitations and, on that basis, dismissed that claim with prejudice instead. But Shayla argues that 28 U.S.C. § 1367(d) "toll[s] the statute of limitations on an identical wrongful death claim that may be filed in state court after dismissal of the federal lawsuit." We agree that the existence of this tolling provision warrants dismissing these claims without prejudice.

As personal representative of the estate, Shayla is limited to a wrongful death claim because, in Alabama, a deceased's unfiled tort claims do not survive his death. *Bassie v. Obstetrics & Gynecology Assocs. of Nw. Ala., P.C.*, 828 So. 2d 280, 282 (Ala. 2002); *see also Nationwide Mut. Ins. Co. v. Wood*, 121 So. 3d 982, 984 (Ala. 2013). The statute of limitations for wrongful death is two years. Ala. Code § 6-5-410(d) (1975). The initial complaint asserted a wrongful death

claim against Madison, it is undisputed that the alleged tort oc-curred on October 27, 2019, and the personal representative of the estate filed its claims against Madison on October 26, 2021. Accord-ingly, as the district court recognized, the wrongful death claim ap-pears to have been brought within Alabama's two-year statute of limitations.

The district court nonetheless concluded that the wrongful death claim was time-barred because the *second amended complaint* was filed after the statute of limitations had run. Madison does not defend this conclusion, and with good reason. Federal law provides that "[t]he period of limitations for any [state] claim [joined with a claim within federal-court competence] shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). The Supreme Court has explained that section "1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock." *Artis v. District of Colum-bia*, 583 U.S. 71, 75 (2018). Put differently, "the state limitations pe-riod is suspended during the pendency of the federal suit." *Id.* at 74.

The defective second amended complaint had no impact on section 1367(d)'s tolling provision because the federal litigation, in-cluding the wrongful death claim, was already pending at that time. The district court concluded otherwise only because it misread dicta in a footnote in an unpublished, nonprecedential opinion from this Court. *McMahon v. Cleveland Clinic Found. Police Dep't*, 455 F. App'x 874, 877 n.1 (11th Cir. 2011) (per curiam). But, in

*McMahon*, the district court dismissed a complaint without prejudice. *Id.* at 876. The footnote's commentary about a potential refiled complaint after that without-prejudice dismissal does not support the district court's with-prejudice dismissal here.

Instead of defending the district court's reasoning, Madison argues that the statute of limitations ran on the wrongful death claim before it could be tolled by federal law because the personal representative did not pay the filing fee and provide service instructions on the day the federal suit was filed. Madison contends that under Alabama law, a "complaint must be filed and there must also exist 'a bona fide intent to have it immediately served'" for litigation to stop the statute of limitations from running. *Precise v. Edwards*, 60 So. 3d 228, 230–31 (Ala. 2010) (quoting *Dunnam v. Ovbiagele*, 814 So. 2d 232, 238 (Ala. 2001)). The state courts may address this new argument if Shayla refiles. As we explained in *Vibe Micro*, a dismissal without prejudice allows state courts to act as the "final arbiters" of state law in addressing potential defenses to state claims. *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

As it is, we are confident that, had the district court not misread our opinion in *McMahon*, it would not have dismissed the wrongful death claim with prejudice. Although Shayla did not raise this issue in her initial brief, we may exercise our discretion to resolve the issue because it involves a pure legal question and our refusal to consider it would result in a miscarriage of justice. *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc).

Therefore, we reverse and remand on this issue with instructions for the district court to dismiss the wrongful death claim without prejudice to refiling in state court.

## IV.

We **GRANT** the motion for substitution and **AFFIRM** the district court's dismissal of the complaint on shotgun-pleading grounds. We **REVERSE** and **REMAND** with instructions for the district court to dismiss the wrongful death claim without prejudice. We **DENY** all other pending motions as moot.

23-10873          WILSON, J., Dissenting in Part                    1

WILSON, Circuit Judge, Concurring in Part and Dissenting in Part:

The majority denies Shayla Fletcher an opportunity to amend her complaint. Leave to amend should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice so requires here[1].

After Dana Fletcher was killed by police, Shayla, his sister and an attorney, represented Dana's wife Cherelle Fletcher, their daughter V.F., and Dana's estate in this action against the City of Madison and fourteen other named and unnamed defendants. Without receiving the names of the officers who shot her brother, Shayla Fletcher filed a complaint. The district court dismissed her First Amended Complaint as a "shotgun pleading," stating only that it violated "*at least* the third *Weiland* factor." Shayla submitted a Second Amended Complaint, which the district court dismissed with prejudice, again deeming it a "shotgun pleading."[2]

A district court may "dismiss a complaint on shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). But Rule 15(a) "evinces a bias in favor of granting leave

---

[1] While we would have granted leave to amend, absent leave, we agree with the majority that the wrongful death claim should have been dismissed without prejudice as to refiling in state court.

[2] "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). *Weiland*, which the court referenced here, identified "four rough types of categories of shotgun pleadings." 792 F. 3d at 1321–23.

2　　　　　　　WILSON, J., Dissenting in Part　　　　　23-10873

to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (Former 5th Cir. 1981).[3] The policy of Rule 15(a) "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Id.* at 598; *see also Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989) ("[U]nless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.").

In this case, before discovery can be conducted, arguments on the merits can be considered, or a jury can deliberate and render a verdict, the estate's constitutional claims are thrown out, never to be allowed in court again. Without the opportunity to reach discovery, Dana's family will never learn what really happened the night he was killed by police. The City of Madison and its police department refused to release the police body camera footage[4]

---

[3] *Dussouy* was decided by a non-unit panel of the Former Fifth Circuit and is therefore binding on us. *See* 660 F.2d at 594 n.*; *see also Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982) (explaining that a decision "made by a non-unit panel of the Former Fifth, the full en banc court of the Former Fifth, or Unit B panel of the Former Fifth Circuit" is "binding precedent which we would have to follow absent Eleventh Circuit en banc consideration").

[4] Shayla's Motion to Lift the stay to conduct limited discovery was opposed by the defendants. The district court denied the motion to stay without prejudice to refile. Shayla refiled her Motion to Lift the stay but the court dismissed Shayla's Second Amended Complaint with prejudice and did not decide on that motion.

23-10873          WILSON, J., Dissenting in Part          3

despite releasing stills to the media.[5] They also refused to release the names of the officers involved in the shooting despite attempting to hold a celebration in their honor.[6] The City and Police Department were even so brazen as to argue that unnamed officers were "fictitious defendants" and that they do not know which officers were the subject of which claims. Surely, if the Madison Police Department planned to host a ceremony awarding the officers Medals of Honor for their "bravery" they knew who the guests of honor were and what acts of bravery they were lauding.

In a society increasingly demanding transparency from those who swear an oath to protect them,[7] I would not dismiss a case before such transparency can be demanded. Now, due to a pleading deficiency that could have been remedied, Dana's family members will never get their day in court. They may never know the full story of what happened to their son, brother, and father. Shayla Fletcher was not given an opportunity to amend, as justice

---

[5] Ashley Remkus, *Alabama Police Department Halts Award Ceremony for Officers Involved in Black Man's Shooting Death*, AL.com (Jul. 19, 2020), https://www.al.com/news/2020/07/madison-police-to-award-officers-involved-in-dana-fletcher-shooting.html.

[6] *See As Family Protests Police Killing of Dana Fletcher, City Planned to Honor Officers Who Shot Him*, Equal Justice Initiative (July 28, 2020), https://perma.cc/5WAB-H6F7.

[7] *See* Leily Arzy & Ram Subramanian, *State Policing Reforms Since George Floyd's Murder*, Brennan Ctr. for Just. (May 21, 2021), https://perma.cc/U7RG-A6ZE (discussing how citizens "drove changes through the ballot box, with at least 18 ballot initiatives strengthening law enforcement oversight nationwide").

4                    WILSON, J., Dissenting in Part                    23-10873

requires. As both the district court and this court should have afforded her that opportunity, I respectfully dissent.